[Cite as *State v. Carter*, 2010-Ohio-6316.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
ROSS COUNTY

STATE OF OHIO,                                :
                                              :
        Plaintiff-Appellee,                   :        Case No: 10CA3169
                                              :
        v.                                    :
                                              :        DECISION AND
CECIL R. CARTER,                              :        JUDGMENT ENTRY
                                              :
        Defendant-Appellant.                  :        File-stamped date:  12-21-10

_____

APPEARANCES:

Timothy Young, Ohio Public Defender, Columbus, Ohio, and Jessica S. McDonald, Ohio Assistant Public Defender, Chillicothe, Ohio, for Appellant.

Toni L. Eddy, Chillicothe Law Director, and Kathryn B. Janes, Chillicothe Assistant Law Director, for Appellee.

_____

Kline, J.:

{¶1} Cecil R. Carter (hereinafter "Carter") appeals the judgment of the Chillicothe Municipal Court, which found him guilty of theft. On appeal, Carter initially contends that the trial court should have granted his request for the appointment of new counsel. Because Carter did not show good cause for this request, we disagree. Carter also contends that the trial court should have instructed the jury on (1) attempted theft and (2) the affirmative defense of abandonment. Because the evidence did not support either of these jury instructions, we disagree. Accordingly, we overrule Carter's assignments of error and affirm the judgment of the trial court.

I.

{¶2}      On May 12, 2010, Carter entered a Wal-Mart store in Chillicothe.  While in the store, Carter loaded his shopping cart with $460.72 worth of merchandise.  Carter did not attempt to pay for the items.  Nevertheless, he pushed the shopping cart past the self-checkout cash registers and through the general merchandise doors.

{¶3}      Wal-Mart employee Bubber Wright (hereinafter "Wright") had been watching Carter's actions inside the store.  After Carter exited through the general merchandise doors, Wright confronted him about the merchandise in the shopping cart.  Carter then abandoned the shopping cart and ran into the parking lot.  At trial, Wright described the events in the following manner:

{¶4}      "While out walking the floor, I noticed Mr. Carter in infants.  His cart was full. He had everything stacked very neatly, piled up.  When he come out [sic] he was looking around.  I hid behind a wall where he couldn't see me.  He went through women's wear to the front of the fitting room.  Then he proceeded to go down toward the jewelry department.  He stopped in the action alley in front of jewelry.  He looked around.  Then he turned left.  He went through the self-checks without an attempt to pay.  He turns right.  He goes to the G.M. exit.  I was following him at this time.  I knew he hadn't paid for the merchandise.  He goes to the G.M. exit.  The door greeter, Sadie, asked him twice for a receipt, but I was going to stop him anyway.  He goes outside the G.M. doors.  I approach him.  I ask him for his receipt.  I identified myself as Asset Protection for Wal-Mart.  I asked him to come back inside that we needed to talk about the merchandise that was in the cart.  At that time, Mr. Carter bolted.  He took off running from me.  He went toward the gas station.  He got behind a vehicle and hid from me. * * *.

{¶5}     "Q Were you able to locate Mr. Carter?

{¶6}     "A Yes.  He popped up right at that point.  He walks toward me and I ask him once again that we need to talk about the merchandise that you pushed out.  He said 'I didn't push out anything.'  At that time he turned around.  He ran to a green vehicle, 2-door rag top [sic].  He jumps in and I immediately call the Chillicothe Police Department and got a hold of the dispatcher.  I identified the car and identified Mr. Carter.

{¶7}     "* * *

{¶8}     "Q Now you described something as G.M. door.  What is that?

{¶9}     "A General merchandise exit.

{¶10}     "Q Is that the big, huge doors?

{¶11}     "A Yes ma'am.

{¶12}     "Q And that is used for entrance and exit to the store?

{¶13}     "A Yes.

{¶14}     "Q How far behind were you from Mr. Carter?

{¶15}     "A When he exited, I was probably five foot [sic] behind him.  I waited for him to get outside the exit door.  He was already on the outside.

{¶16}     "Q Okay.  And how far out the exit door was he when you talked to him first?

{¶17}     "A Just right outside.  Right outside the door.  The cart was just outside the door.

{¶18}     "Q Did Mr. Carter say, 'all my gosh, I forgot to pay, I need to go fix that?'

{¶19}     "A No ma'am.

{¶20}     "Q At what point did Mr. Carter run?

**{¶21}** "A When I identified myself. I said I need to talk to you about the merchandise that you have in this cart. Then his eyes shifted. He looked around and he ran to the left hand side of me." TRIAL BY JURY Transcript at 53-54, 56-57.

**{¶22}** Eventually, the police apprehended Carter and charged him with theft under Section 545.05 of the Revised Ordinances of the City of Chillicothe, Ohio (which is analogous to R.C. 2913.02). Because he allegedly stole less than $500 worth of merchandise, Carter was charged with a first-degree misdemeanor.

**{¶23}** On the morning of his trial, Carter requested new appointed counsel. The trial court held a hearing on Carter's request.

**{¶24}** "MR. CARTER: I told you I'd like to have other counsel represent me.

**{¶25}** "COURT: I'm not going to appoint another attorney for you sir.

**{¶26}** "MR. CARTER: I have the right to have counsel (inaudible . . .)

**{¶27}** "COURT: You don't have that right sir.

**{¶28}** "MR. CARTER: The Criminal Rule and the Ohio Revised Code states that.

**{¶29}** "COURT: Well, I don't believe that it does.

**{¶30}** "MR. CARTER: I believe it does. I'll show it to you.

**{¶31}** "COURT: Well, you can take that up on appeal then if you think that is necessary.

**{¶32}** "MR. CARTER: I do.

**{¶33}** "COURT: I'm not going to appoint another attorney. [Carter's Appointed Trial Counsel] has been representing you throughout this proceeding.

**{¶34}** "MR. CARTER: He's not done nothing but tell me what you want to give me is six months. He's done nothing else but that.

**{¶35}** "COURT: Well, I'm not sure what else there is to tell you at this point.

**{¶36}** "MR. CARTER: He's suppose[d] to represent me, not convict me.

**{¶37}** "* * *

**{¶38}** "MR. CARTER: I've told him to plea negotiate but he insisted it's wrong.

**{¶39}** "COURT: Well, you can't negotiate unless there's two sides willing to negotiate. There's not really anything for you to negotiate at this point." HEARING BEFORE JURY TRIAL Transcript at 1-2.

**{¶40}** Carter went to trial with his appointed counsel. The state called Wright and a Chillicothe Police Officer as witnesses. Then, the state rested its case. Carter rested his case without calling any witnesses or producing any evidence.

**{¶41}** At the close of evidence, Carter requested jury instructions on (1) attempted theft and (2) the affirmative defense of abandonment. The trial court, however, did not give either of Carter's requested jury instructions.

**{¶42}** The jury found Carter guilty of theft, and the trial court sentenced Carter to the maximum sentence for a first-degree misdemeanor. He appeals and asserts the following three assignments of error: I. "THE COURT BELOW ERRED IN RULING THAT THE DEFENDANT DID NOT HAVE THE RIGHT TO FIRE HIS COURT APPOINTED COUNSEL ON THE MORNING OF TRIAL." II. "THE COURT BELOW ERRED IN RULING THAT THE DEFENDANT WAS NOT ENTITLED TO A JURY INSTRUCTION ON THE DEFENSE OF ABANDONMENT." And, III. "THE COURT BELOW ERRED IN RULING THAT THE DEFENDANT WAS NOT ENTITLED TO A JUST INSTRUCTION ON AN ATTEMPT TO COMMIT THEFT."

II.

**{¶43}** In his first assignment of error, Carter contends that the trial court should have (1) discharged his appointed counsel and (2) appointed substitute counsel before Carter's trial.

**{¶44}** "A trial court's decision regarding a request for substitute counsel is governed by an abuse of discretion standard." *State v. Flesher*, Monroe App. No. 06 MO 4, 2007-Ohio-4982, at ¶19, citing *State v. Murphy*, 91 Ohio St.3d 516, 523, 2001-Ohio-112; *State v. Smith* (Dec. 29, 1998), Lawrence App. No. 98CA12. An abuse of discretion connotes more than a mere error of judgment; it implies that the court's attitude is arbitrary, unreasonable, or unconscionable. *State v. Adams* (1980), 62 Ohio St.2d 151, 157.

**{¶45}** "The defendant bears the burden of announcing the grounds for a motion for appointment of new counsel. If the defendant alleges facts which, if true, would require relief, the trial court must inquire into the defendant's complaint and make the inquiry part of the record." *Smith*, citing *State v. Deal* (1969), 17 Ohio St.2d 17, 20 (other citations omitted). "Although the inquiry may be brief and minimal, the inquiry must be made." *State v. Erwin*, Franklin App. No. 09AP-918, 2010-Ohio-3022, at ¶8, citing *State v. King* (1995), 104 Ohio App.3d 434, 437. Grounds for obtaining newly appointed counsel exist only upon a "showing of good cause, such as a conflict of interest, a complete breakdown of communication, or an irreconcilable conflict which leads to an apparently unjust result." *State v. Blankenship* (1995), 102 Ohio App.3d 534, 558, citing *State v. Pruitt* (1984), 18 Ohio App.3d 50, 57; see, also, *Erwin* at ¶7, citing *Smith*; *State v. Coleman* (1988), 37 Ohio St.3d 286, at paragraph four of the syllabus ("To discharge a court-appointed attorney, the defendant must show a breakdown in the attorney-client

relationship of such magnitude as to jeopardize the defendant's right to effective assistance of counsel."). If a defendant can show good cause, a trial court's "failure to honor the defendant's timely request amount[s] to a denial of effective assistance of counsel." *Pruitt* at 57.

**{¶46}** Here, Carter failed to show good cause for the appointment of new counsel. Carter alleged that his attorney did "nothing but tell [him] what [the trial court] want[ed] to give [him was] six months. [Carter's Appointed Trial Counsel did] nothing else but that." For that reason, Carter claimed that his appointed counsel (1) was not actually representing Carter and (2) would not engage in plea negotiations. But here, we disagree with Carter's assessment of his appointed counsel. During Carter's sentencing, the trial court noted that Carter had "been arrested 30 times for theft related offenses." TRIAL BY JURY Transcript at 101. Additionally, the state noted that Carter had "four prior theft convictions" in the Chillicothe Municipal Court and "[o]ne felony theft conviction" in Ross County. TRIAL BY JURY Transcript at 100. Thus, based on his history of theft, it was likely that Carter would receive the maximum sentence in the present case. And we believe that Carter's appointed counsel was merely informing Carter of this fact. Carter may not have liked hearing this information, but that does not mean that there was a complete breakdown in the attorney-client relationship. If it did, any defendant who receives "bad news" from an attorney would be entitled to new counsel.

**{¶47}** Therefore, Carter did not show good cause for the appointment of new counsel, and the trial court did not abuse its discretion by denying Carter's request for a new attorney.

**{¶48}** Accordingly, we overrule Carter's first assignment of error.

III.

**{¶49}** Because its resolution could impact his second assignment of error, we will address Carter's third assignment of error out of order. In his third assignment of error, Carter contends that "it was error for the trial court to deny the defendant an instruction on an attempted theft." Brief of Defendant-Appellant at 4.

**{¶50}** "Generally, a trial court has broad discretion in deciding how to fashion jury instructions. A trial court must not, however, fail to 'fully and completely give the jury all instructions which are relevant and necessary for the jury to weigh the evidence and discharge its duty as the fact finder.' *State v. Comen* (1990), 50 Ohio St.3d 206, [at] paragraph two of the syllabus. Additionally, a trial court may not omit a requested instruction, if such instruction is 'a correct, pertinent statement of the law and [is] appropriate to the facts * * *.' *State v. Lessin*[,] 67 Ohio St.3d 487, 493, [1993-Ohio-52] (quoting *State v. Nelson* (1973), 36 Ohio St.2d 79, [at] paragraph one of the syllabus).

**{¶51}** "In determining whether to give a requested jury instruction, a trial court may inquire into the sufficiency of the evidence to support the requested instruction. See [*Lessin*] at 494. A trial court is therefore vested with discretion to determine whether sufficient evidence was presented at trial [to] require[] a particular jury instruction. [*State v. Mitts*, 81 Ohio St.3d 223, 228, 1998-Ohio-635.] If, however, the evidence does not warrant an instruction a trial court is not obligated to give the requested instruction. See *Lessin* * * * at 494. Thus, in our review we must determine whether the trial court abused its discretion by finding that the evidence was insufficient to support the requested charge. See *Mitts* [at 228]; *State v. Wolons* (1989), 44 Ohio St.3d 64, [at]

paragraph two of the syllabus[.]" *Smith v. Redecker*, Athens App. No. 08CA33, 2010-Ohio-505, at ¶51-52. See, also, *State v. Gary*, Hamilton App. No. C-090643, 2010-Ohio-5321, at ¶23; *State v. Jordan*, Trumbull App. No. 2009-T-0110, 2010-Ohio-5183, at ¶27; *State v. McClendon*, Montgomery App. No. 23558, 2010-Ohio-4757, at ¶13; but, see, *State v. Howard*, Ross App. No. 07CA2948, 2007-Ohio-6331, at ¶27 ("[T]he issue of whether an instruction is required presents a question of law for de novo review.").

**{¶52}** "R.C. 2913.02(A) [and Section 545.05 of the Chillicothe City Ordinances] prohibit[] a person, 'with purpose to deprive the owner of property,' from 'knowingly' obtaining or exerting 'control' of the property without the consent of the owner. R.C. 2923.02 defines criminal 'attempt' as 'engag[ing] in conduct that, *if* successful, would constitute or result in the offense.'" *State v. Lee*, Cuyahoga App. No. 87972, 2007-Ohio-288, at ¶33 (emphasis sic).

**{¶53}** Here, we find that the evidence did not warrant an instruction on attempted theft. The facts in the present case are nearly identical to the facts in *State v. Randazzo*, Cuyahoga App. No. 79667, 2002-Ohio-2250. In *Randazzo*, the defendant was convicted of stealing merchandise from a Home Depot. At trial, the defendant requested a jury instruction on attempted theft, which the trial court did not give. On appeal, the defendant "claim[ed] that the jury should have been instructed on * * * attempted theft since his actions reflect[ed] a thwarted attempt at theft." Id. at ¶49. The Eighth District Court of Appeals, however, disagreed and found the following: "R.C. 2913.02 defines theft as knowingly obtaining possession of or exerting control over property with the purpose to permanently deprive the owner of possession of such property without the owner's consent. The property must be moved with the intent to

deprive the owner of his property. *State v. Williams* (1984), 16 Ohio App.3d 232[.] The property need not be removed from the premises of the owner nor retained in the possession of the thief to constitute theft. Id. * * *.

**{¶54}** "[In *Randazzo*], defendant had completed every act necessary to commit the crime of theft. Defendant filled a shopping cart full of tiles, which were the property of Home Depot, and then walked outside the store with the merchandise until he was apprehended by an employee. Defendant moved well past a mere attempt to steal the merchandise[.]" *Randazzo* at ¶51-52.

**{¶55}** We agree with the analysis in *Randazzo* and apply that reasoning to the present case. Here, Carter moved well past a mere attempt to steal the merchandise from Wal-Mart. The evidence demonstrates that Carter filled a shopping cart full of products. Those goods were the property of Wal-Mart, and Carter walked outside the store without attempting to pay for the merchandise. Carter abandoned the merchandise only after being confronted by Wright. Significantly, there is *no evidence* that Carter was unsuccessful in exerting control over the merchandise. See *Lee* at ¶35 (The defendant "was *successful* in exercising control over the stores' property, since he left the stores without paying for the items. [The defendant's] failure to *escape* with the property does not prove he made only an 'attempt.'") (emphasis sic). Instead, the evidence clearly demonstrates that Carter exerted control over the merchandise by (1) putting the items in a shopping cart and (2) pushing the shopping cart outside the store. As a result, the trial court did not abuse its discretion by refusing to instruct the jury on attempted theft.

**{¶56}** Accordingly, we overrule Carter's third assignment of error.

IV.

**{¶57}** In his second assignment of error, Carter contends that the trial court erred by failing to instruct the jury on the affirmative defense of abandonment.

**{¶58}** We will review Carter's second assignment of error under the abuse-of-discretion standard discussed in the preceding section. Moreover, "'[t]he standard for determining whether a criminal defendant has successfully raised an affirmative defense under R.C. 2901.05 is to inquire whether the defendant has introduced sufficient evidence which, if believed, would raise a question in the minds of reasonable people concerning the existence of that defense. *State v. Melchior* (1978), 56 Ohio St.2d 15, [at] paragraph one of the syllabus. R.C. 2901.05(A) provides that the burden of going forward with the evidence of an affirmative defense, as well as the burden of proving the existence of that defense by a preponderance of the evidence, lie with the accused. * * * The trial court, as matter of law, cannot give a jury instruction on an affirmative defense if the defendant fails to meet this initial burden. *State v. Reedy* (Dec. 11, 1996), Jackson App. No. 96CA782[.]'" *State v. Porozynski*, Cuyahoga App. No. 93827, 2010-Ohio-5122, at ¶23, quoting *State v. Powell* (Sept. 29, 1997), Ross App. No. 96CA2257.

**{¶59}** "R.C. 2923.02 provides for the criminal offense of attempt. Abandonment is an affirmative defense to a charge of attempted theft under R.C. 2923.02(D), which states:

**{¶60}** 'It is an affirmative defense to a charge under this section that the actor abandoned the actor's effort to commit the offense or otherwise prevented its commission, under circumstances manifesting a complete and voluntary renunciation of

the actor's criminal purpose.'" *State v. McGhee*, Lucas App. No. L-06-1210, 2007-Ohio-6527, at ¶16-17, quoting R.C. 2923.02(D).

**{¶61}** Here, we find that the evidence did not warrant an instruction on the affirmative defense of abandonment. Initially, the state contends that abandonment is an affirmative defense to a charge of *attempted* theft, but not to a charge of theft under either R.C. 2913.02 or Section 545.05 of the Chillicothe City Ordinances. We agree. Therefore, "[b]ecause the trial court was not required to instruct the jury regarding attempted theft, it follows that an abandonment instruction was not required either." *State v. Cadle*, Summit App. No. 24064, 2008-Ohio-3639, at ¶16, citing R.C. 2923.02(D).

**{¶62}** Furthermore, because there is no evidence that Carter completely and voluntarily renounced his criminal purpose, an abandonment instruction would have been inappropriate in the present case. We agree that there can be "no 'complete and voluntary renunciation' of a criminal purpose as required under R.C. 2923.02(D) when the abandonment of the criminal activity is undertaken under fear of imminent detection or apprehension." *McGhee* at ¶28, citing *State v. Arnold* (1983), 9 Ohio Misc.2d 14, 14-15. See, also, *State v. Greene* (Dec. 14, 1993), Pickaway App. No. 92 CA 32 ("Many courts have agreed that the act of ending a crime due to the fear of detection is not a 'complete and voluntary renunciation.'"); 26 Ohio Jurisprudence 3d, Criminal Law, Section 648 ("Renunciation of criminal purpose is not voluntary if it is motivated, in whole or in part, by circumstances not present or apparent at the inception of the actor's course of conduct that increase the probability of detection or apprehension or that make more difficult the accomplishment of the criminal purpose."). And here, the

evidence demonstrates that Carter abandoned the shopping cart full of merchandise only after being confronted by Wright.  Because Carter presented no evidence to the contrary, there is no evidence that Carter's actions were complete and voluntary as required by R.C. 2923.02(D).  Therefore, no reasonable person could have found a question regarding the affirmative defense of abandonment.

**{¶63}**      Accordingly, the trial court did not abuse its discretion by refusing to instruct the jury on the affirmative defense of abandonment, and we overrule Carter's second assignment of error.  Having overruled all of his assignments of error, we affirm the judgment of the trial court.

**JUDGMENT AFFIRMED.**

Harsha, J., concurring:

**{¶64}**    I concur in judgment and opinion except to the extent the opinion adopts an abuse of discretion standard for the entire jury instruction analysis.  I continue to believe we should conduct a de novo review to see if any instruction on the issue is warranted and then afford the trial court the discretion to craft the actual wording of the instruction. See *State v. Powell,* Ross App. No. 96CA2257, 1997 WL 602864, citing *Murphy v. Carrollton Mfg. Co.* (1991), 61 Ohio St.3d. 585, 591.

## **JUDGMENT ENTRY**

It is ordered that the JUDGMENT BE AFFIRMED.  Appellant shall pay the costs herein taxed.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Chillicothe Municipal Court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.  Exceptions.

Harsha, J.:  Concurs in Judgment and Opinion with Opinion.
Abele, J.:  Concurs in Judgment only.

For the Court

BY:_____
Roger L. Kline, Judge

## **NOTICE TO COUNSEL**

**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**