[Cite as *Hacker v. Roddy*, 2013-Ohio-5085.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## HANCOCK COUNTY

MARCIA HACKER, ET AL.,

    PLAINTIFFS-APPELLEES,           CASE NO. 5-13-13

    v.

ARDELL RODDY, ET AL.,              O P I N I O N

    DEFENDANTS-APPELLANTS.


Appeal from Hancock County Common Pleas Court
Trial Court No. 2011-CV-9

Judgment Affirmed

Date of Decision:    November 18, 2013


APPEARANCES:

    *Christine M. Gaynor*  for Appellants

    *Daniel F. Maynard*  for Appellees

**SHAW, J.**

{¶1} Defendants-appellants, Ardell and Garnett Roddy and German Mutual Insurance (collectively referred to as "appellants"), appeal the March 22, 2013 judgment of the Hancock County Court of Common Pleas granting the motion for a new trial filed by plaintiffs-appellees, Marcia and Lyndon Hacker (collectively referred to as "appellees").

{¶2} On January 4, 2011, Marcia and Lyndon filed a complaint against the appellants alleging negligence, negligent entrustment of a motor vehicle, and loss of consortium and companionship. Specifically, the complaint alleged that on January 7, 2009, Marcia suffered injuries as a direct and proximate result of a motor vehicle accident in Findlay, Ohio, wherein Ardell, who was driving a vehicle owned by Garnet, collided with Marcia's vehicle from behind. The complaint requested compensatory damages in excess of $25,000.00 and special damages in the amount of $9,361.00.

{¶3} The appellants subsequently filed an answer stating the following as an affirmative defense. "Defendant states that even if it were negligent in any respect, which it does not admit but herein expressly denies, Plaintiff's injuries and damages, if any, were cause [sic] by the carelessness & negligence of the Plaintiff herself, which directly and proximately contributed thereto." (Doc. No. 18 at 3).

{¶4} The case proceeded to a three-day trial on September 10, 2012. Prior to the trial, the parties settled the issue of property damage regarding Marcia's vehicle and the appellants admitted to Ardell's negligence in causing the collision. Accordingly, the only remaining issues to be litigated at trial were whether the appellants were liable for the injuries Marcia claimed to have suffered as a result of the collision and whether they were liable for the loss of consortium and companionship Lyndon claimed to have suffered as a result of Marcia's injuries.

{¶5} In support of their claims, Marcia and Lyndon provided testimony in addition to calling Ardell and Garnet to the stand. Marcia and Lyndon also presented the testimony of Dr. William Kentris, the chiropractor who treated Marcia for neck pain after the accident. Ardell and Garnet did not call any witnesses in their defense.

{¶6} The evidence at trial revealed that on January 7, 2009, at approximately 3:40 p.m. on a weekday, Marcia's vehicle stalled on a two-lane bridge located on Osborn Avenue in Findlay. Marcia testified that she immediately put the vehicle in "brake," illuminated her hazard lights, and called Lyndon for assistance. Marcia further explained that she remained in the vehicle with her seatbelt fastened because she believed it to be the safest place given the traffic on the bridge at that time of day and the amount of ice accumulated on the side of the bridge. Marcia claimed she was stationary on the bridge for a few

minutes before nineteen-year-old Ardell hit her vehicle from behind while driving a vehicle owned by his mother, Garnet. Both cars were total losses as a result of the collision.

{¶7} Marcia was placed on a backboard and fitted with a cervical brace by first responders who then transported her to a local hospital by ambulance. She was given medication for neck pain and discharged later that night. Marcia testified that she suffered from a soft-tissue injury to her neck as a result of the accident. Marcia claimed she had no neck pain prior to the accident. Marcia testified that she wore a cervical brace for several months after the accident and that her injury impaired her quality of life and prevented her from attending to her familial responsibilities. Marcia also testified that she did not return to work until April that year due to her neck injury, which resulted in lost income.

{¶8} On cross-examination, defense counsel questioned Marcia about certain answers she gave in a deposition where she revealed that several years prior to the accident she asked her family doctor to examine her regarding some "neck discomfort." (Doc. No. 96 at 125). Marcia admitted to being examined by her doctor and explained that at the time she was concerned because there was no specific event precipitating her "neck discomfort." Marcia explained that her doctor took an x-ray of her neck and determined that she had mild arthritis. Marcia also admitted on cross-examination that prior to the accident she suffered

from migraines once or twice a month due to the fact that migraines "run in [her] family." (Id. at 127). Marcia explained that she was in a motor vehicle accident over thirty years ago in which she suffered a concussion but had no other significant injuries.

{¶9} Dr. Kentris testified that in 2009 Marcia came into his office with complaints of neck pain and headaches as a result of a recent motor vehicle accident. Dr. Kentris stated that he reviewed the medical records including x-rays from Marcia's emergency room visit immediately following the accident. Dr. Kentris explained that he saw Marcia a total of nine times during which he took x-rays and administered various chiropractic treatments on her neck. Dr. Kentris stated that he also referred her to a doctor of physical medicine for further evaluation. Dr. Kentris opined that he believed there to be a direct and proximate causal link between Marcia's soft tissue injury in her neck and the motor vehicle accident at issue in the case.

{¶10} Lyndon provided testimony in support of his loss of consortium and companionship claim in which he described the effects of Marcia's soft tissue injury on their marriage. Lyndon also testified that Marcia's injury impaired his ability to work overtime due to the fact that he had to assume many of Marcia's responsibilities at home. Lyndon claimed this contributed to him eventually losing his job.

**{¶11}** As previously mentioned, Ardell and Garnet were also called to testify by Marcia and Lyndon. Ardell testified that he was travelling no more than 20 mph at the time of the collision. Ardell also testified that his driver's license was suspended at the time of the accident due to an underage consumption charge, but he was given limited driving privileges for employment purposes, which he claimed to be exercising at the time of the accident. Garnet testified that she owned the vehicle Ardell was driving at the time of the accident and was aware of Ardell's license suspension and limited driving privileges.

**{¶12}** In regards to the damages being sought, Marcia and Lyndon testified that they were seeking an award of $30,000.00. This number included the medical bills Marcia claimed to have incurred as a result of her neck injury and the accident, Marcia's lost wages, compensation for the time Lyndon expended in taking care of Marcia's household duties, and Marcia's pain and suffering. To substantiate their award request, Marcia and Lyndon attempted to admit as evidence several medical bills for the jury to review. These bills included the ambulance and emergency room expenses from the date of the accident and additional medical treatment Marcia sought from various medical professionals, x-rays, a MRI, and physical therapy most of which were incurred in the weeks and months following the accident.

{¶13} However, following an objection from defense counsel, the trial court excluded many of the medical bills on the basis that Marcia failed to present sufficient evidence to establish a causal connection between the medical treatment reflected in some of the bills and the soft tissue injury she claimed to have suffered as a result of the accident. As previously stated, the only medical professional to testify was Dr. Kentris, Marcia's chiropractor. Consequently, the trial court admitted only those medical bills incurred on the date of the accident, which consisted of the ambulance and emergency room related expenses, and Dr. Kentris' bill for chiropractic treatment.

{¶14} After the presentation of the evidence and closing arguments and prior to the jury deliberating, the trial court discussed its jury instructions with counsel. Over an objection from defense counsel, the trial court declined to give an instruction on the affirmative defense of comparative negligence finding that the evidence did not support the instruction.

{¶15} The jury deliberated and returned a verdict in favor of Marcia on the negligence claim against Ardell. In specific interrogatories, the jury awarded Marcia $1,183.00 in "economic loss" and $0.00 in "non-economic loss." The jury also returned verdicts in favor of Ardell and Garnet and against Marcia and Lyndon on the negligent entrustment of a motor vehicle and the loss of consortium and companionship claims.

{¶16} On September 21, 2012, Marcia and Lyndon filed a Civ.R. 50 Motion for Judgment Notwithstanding the Verdict and a Civ.R. 59 Motion for a New Trial, citing numerous alleged errors with the trial and the jury's award. One of the specific grounds raised by Marcia and Lyndon in their motions was the allegation that the jury award of $1,183.00 in "economic losses," which they alleged to be comprised of only medical expenses, without awarding any amount for pain and suffering, was an inadequate award appearing to have been given under the influence of passion or prejudice and not sustained by the weight of the evidence. *See* Civ.R. 59(A)(4),(6). Marcia and Lyndon also alleged the award demonstrated that the jury improperly considered the issue of comparative negligence in determining the amount of economic damages owed to Marcia.

{¶17} On March 22, 2013, the trial court issued a judgment entry, granting Marcia and Lyndon's motion for a new trial and overruling their motion for a judgment notwithstanding the verdict, finding the motion to be moot. Specifically, the trial court stated the following as the basis for its decision:

> **The facts of this case are very similar to other cases out of the Ohio Court of Appeals for the Third District. In *Miller v. Irvin*, a jury awarded a plaintiff $7,000 after a car accident, which specifically did *not* include any damages for pain and suffering. *Miller* (3rd Dist. 1988), 49, Ohio App.3d 96,98, 550 N.E. 501. The trial court did not grant Plaintiff's request for a new trial on the grounds of inadequate award of damages. In reversing the trial court, the Third District noted that the jury award was not only inadequate as to plaintiff's medical bills and lost wages, but that**

**it did not include any amount for pain and suffering, to which the plaintiff was clearly entitled.** *Id.*

**Also, the Third District has more recently ruled that, when a jury awards medical expenses, "some award for pain and suffering should be rendered […] as it is only reasonable to conclude that if there are legitimate medical expenses there must have been some pain and suffering for a plaintiff to seek medical treatment in the first instance."** *Guckes v. Feusner*, **(3rd Dist. 1996), No.5-95-39, \*6. It should be noted that, in** *Guckes*, **the jury completed an interrogatory that indicated the only damages awarded were those for "medical expenses."** *Id.* **The interrogatory in this matter only states that the sole award is for "economic damages," which could possibly include medical expenses and/or lost wages. The Court, however, finds that an award of lost wages could not be given without a finding of liability for injury. (Fn: Furthermore the Court notes that Defendants' counsel admitted to liability for medical expenses throughout this case and even in closing argument. The main thrust of Defendants' argument has always concerned the** *amount* **of medical expenses.). As such, while the interrogatories differ to some degree, the Court finds the result in** *Guckes* **to be substantially the same as the result here.**

(Doc. No. 92 at 4-5).

{¶18} This appeal was subsequently filed with the following assignments of error raised.

### ASSIGNMENT OF ERROR NO. I

**THE TRIAL COURT ERRED IN GRANTING PLAINTIFFS/APPELLEES' MOTION FOR NEW TRIAL BASED ON THE FACT THAT THE JURY AWARDED PLAINTIFF A SUM FOR MEDICAL EXPENSES BUT NO AMOUNT FOR NONECONOMIC LOSS.**

## ASSIGNMENT OF ERROR NO. II

**THE TRIAL COURT ERRED, TO THE PREJUDICE OF DEFENDANTS/APPELLANTS, IN FAILING AND/OR REFUSING TO INSTRUCT THE JURY ON THE ISSUE OF COMPARATIVE NEGLIGENCE OF PLAINTIFF/APPELLEE MARCIA HACKER AS A PROXIMATE CAUSE OF THE PLAINTIFFS/APPELLEES' INJURIES/DAMAGES.**

{¶19} For ease of discussion, we elect to address the assignments of error out of order.

*The Second Assignment of Error*

{¶20} In their second assignment of error, the appellants maintain that the trial court erred when it refused to instruct the jury on the issue of comparative negligence as requested in their proposed jury instructions submitted prior to trial. Specifically, the appellants argue that the fact that Marcia chose to put her vehicle in park and remain in the middle of the bridge when her car stalled out, instead of placing her vehicle in neutral and coasting down the bridge, and the fact that she decided to remain in her vehicle until help arrived, instead of exiting her vehicle and walking to the sidewalk on the bridge, demonstrate that there was "evidence in the record from which the jury could have found that the actions or inactions of [Marcia] caused or contributed to the cause of her injuries." (Appellants' Brief at 12).

{¶21} In general, requested instructions should be given if they are correct statements of the law applicable to the facts in the case and reasonable minds

-10-

might reach the conclusion sought by the instruction. *Murphy v. Carrollton Mfg. Co.*, 61 Ohio St.3d 585, 591, (1991). "In reviewing a record to ascertain the presence of sufficient evidence to support the giving of a[n] * * * instruction, an appellate court should determine whether the record contains evidence from which reasonable minds might reach the conclusion sought by the instruction." *Id.*, citing *Feterle v. Huettner*, 28 Ohio St.2d 54, at syllabus (1971). In reviewing the sufficiency of jury instructions given by a trial court, the proper standard of review for an appellate court is whether the trial court's refusal to give a requested jury instruction constituted an abuse of discretion under the facts and circumstances of the case. *State v. Wolons* (1989), 44 Ohio St.3d 64, 68. The term "abuse of discretion" implies that the court's attitude is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

{¶22} The record reflects that, after hearing the evidence adduced at trial, the trial court declined to include an instruction on comparative negligence, finding there was not "sufficient evidence in the record to merit an instruction on that." (Doc. No. 98 at 316). As the party asserting the affirmative defense, it was incumbent upon the appellants to present sufficient evidence to warrant the giving of the instruction. "To prove the affirmative defense of contributory negligence, the defendant must prove that the plaintiff breached a duty, proximately causing her own injury. Thus, the plaintiff's own 'want of ordinary care * * * [must have]

combined and concurred with the defendant's negligence and contributed to the injury as a proximate cause thereof, and as an element without which the injury would not have occurred.' " *Segedy v. Cardiothoracic & Vascular Surgery of Akron, Inc*., 182 Ohio App.3d 768, 2009-Ohio-2460, ¶ 61, quoting *Brinkmoeller v. Wilson*, 41 Ohio St.2d 223, 226 (1975).

{¶23} At trial, defense counsel asked Marcia the following questions on cross-examination in an attempt to establish that she was negligent when she remained in her vehicle on the bridge after her vehicle stalled.

> **Defense Counsel:  And as you approached this bridge you didn't even know that your car had apparently stalled, but for you see the lights going nuts and you look down at the idiot lights; correct?**
>
> **Marcia:  That happened right on top of the bridge when my car stalled, not as I was approaching.**
>
> **Defense Counsel:  Okay.  And your reaction to your car stalling was to apply the brake and bring your car to a stop?**
>
> **Marcia:  Correct, and put in park and put my hazard lights on immediately.**
>
> **Defense Counsel:  As opposed to continuing to coast over the bridge?**
>
> **Marcia:  Actually my car would not coast over the bridge.**
>
> **Defense Counsel:  It would not coast.  If it won't coast, then why do you need to put the brake on?**
>
> **Marcia:  Just in case.  I was on the bridge, the other side was slanting down, just for safety.**

**Defense Counsel:  Okay.  So if the other side is slanting down and especially if you put your car in neutral, your car will go down with gravity; correct?**

**Marcia:  It didn't.  I mean, I remained.**

**Defense Counsel:  You didn't let it.  You put your foot on the brake and put it in park.**

**Marcia:  When I was trying to start the car right as it stalled out, it coasted and stopped and I put it into park, and then turned my hazard lights on.  It wasn't coasting.**

**Defense Counsel:  So you didn't put your brake on to bring it to a stop like you told the Jury when your attorney was questioning you?**

**Marcia:  My car was coasting to a stop and I went ahead and put it into park.**

**Defense Counsel:  Okay**

**Marcia:  As I turned my hazard lights on.**

**\* \* \***

**Defense Counsel:  And, certainly, in that time you could have gotten out of your car and moved either onto the sidewalk or off the bridge?**

**Marcia:  There was a very narrow curb on the ice right beside the guard rail.  I didn't feel it safe to be standing on and I didn't want to step out into traffic on the other side of the road either.  That's only two lanes right on top of the bridge.  I felt my best bet would be to stay in my vehicle.**

**Defense Counsel:  You indicated there was some patchy ice. This was not solid ice; right?**

> **Marcia: There was patchy ice on the road, solid ice up on the curb from where they plowed.**
>
> **Defense Counsel: Were there constant cars going by?**
>
> **Marcia: Yeah, it was 3:30, a busy time of day. There was traffic.**
>
> **Defense Counsel: And you had your flashers on?**
>
> **Marcia: Yes.**
>
> **Defense Counsel: You could get out and just walk off the bridge?**
>
> **Marcia: I didn't want to walk off the bridge or into traffic, no, I did not.**

(Doc. No. 96 at 111-115).

{¶24} In support of their argument on appeal, the appellants argue that Marcia parked her vehicle on the bridge in violation of R.C. 4511.66(A), which states:

> **(A) Upon any highway outside a business or residence district, no person shall stop, park, or leave standing any vehicle, whether attended or unattended, upon the paved or main traveled part of the highway if it is practicable to stop, park, or so leave such vehicle off the paved or main traveled part of said highway. In every event a clear and unobstructed portion of the highway opposite such standing vehicle shall be left for the free passage of other vehicles, and a clear view of such stopped vehicle shall be available from a distance of two hundred feet in each direction upon such highway.**
>
> **This section does not apply to the driver of any vehicle which is disabled while on the paved or improved or main traveled portion of a highway in such manner and to such extent that it is**

> **impossible to avoid stopping and temporarily leaving the disabled vehicle in such position.**

R.C. 4511.66(A).

{¶25} The record does not clearly demonstrate that Marcia's vehicle was on a "highway outside a business or residence district" when it stalled and therefore the appellants have not established that R.C. 4511.66(A) even applies in this instance. Nevertheless, Marcia testified that her vehicle was disabled and unable to coast when she parked it on the bridge. She also testified that she remained in her vehicle because she believed it to be the safest place given the traffic and weather conditions. She indicated that approximately five minutes had elapsed between when her car stalled and when Ardell hit her from behind. The appellants offered no evidence to rebut Marcia's testimony other than their own speculations as to how Marcia could have handled the situation differently. Moreover, the appellants presented no evidence at trial establishing that Marcia breached a duty, proximately causing her own injury. Therefore, we cannot find the trial court's decision not to instruct the jury on comparative negligence to be an abuse of discretion. Accordingly, the second assignment of error is overruled.

### *The First Assignment of Error*

{¶26} In their first assignment of error, the appellants argue that the trial court erred in granting Marcia and Lyndon's motion for a new trial.

**{¶27}** The Supreme Court of Ohio has previously held that " '[w]here a trial court is authorized to grant a new trial for a reason which requires the exercise of a sound discretion [such as under Civ.R. 59(A)(4),(6)] , the order granting a new trial may be reversed only upon a showing of abuse of discretion by the trial court.' " *Harris v. Mt. Sinai Med. Ctr.*, 116 Ohio St.3d 139, 2007-Ohio-5587 ¶ 35, quoting *Rohde v. Farmer*, 23 Ohio St.2d 82, paragraph one of the syllabus (1970). An abuse of discretion "implies that the court's attitude is unreasonable, arbitrary or unconscionable." *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219.

**{¶28}** "The generally accepted rule is that a reviewing court should view the evidence favorably to the trial court's action rather than to the jury's verdict." *Rieman v. Congemi*, 8th Dist. Cuyahoga No. 83187, 2004-Ohio-1269, ¶ 6. "The predicate for the rule springs, in part, from the principle that the discretion of the trial judge in granting a new trial may be supported by his having determined from the surrounding circumstances and atmosphere of the trial that the jury's verdict resulted in manifest injustice." *Id.*, citing *Jenkins v. Krieger*, 67 Ohio St.2d 314 (1981).

**{¶29}** In the instant case, the trial court gave the jury the following instructions regarding damages.

> **In deciding the amount of damages, you will consider the plaintiff's "economic loss" and "non-economic loss," if any,**

**proximately and directly caused by the plaintiff's actual injury or loss.**

**ECONOMIC LOSS.** **"Economic loss" means any of the following types of financial harm:**

**(A) All wages, salaries, or other compensation lost as a result of the plaintiff's injury;**

**(B) All expenditures for medical care or treatment, rehabilitation services, or other care, treatment, services, product, or accommodations incurred as a result of the plaintiff's injury;**

**(C) Any other expenditure incurred as a result of the plaintiff's injury or loss. Attorney's fees, if any, are not a matter for your consideration in deliberations.**

**REASONABLE VALUE.** **In determining the reasonable value of medical, hospital, or other related care, treatment, services, products, or accommodations, you shall consider all the evidence submitted. Both the original bill and the amount accepted as full payment may be considered along with all other evidence to determine the reasonable value.**

**NON-ECONOMIC LOSS.** **"Non-economic loss" means harm other than economic loss that results from the plaintiff's injury, including, but not limited to, pain and suffering; loss of society, consortium, companionship, care, assistance, attention, protection, advice, guidance, counsel, instruction, training, or education; disfigurement; mental anguish; and any other intangible loss * * *[.]**

**In determining an award for "non-economic loss," you shall not consider any of the following:**

**Evidence of Ardell or Garnet Roddy's alleged wrongdoing, misconduct, or guilt; and**

**Evidence of the defendant's wealth or financial resources; and**

**All other evidence that is offered for the purpose of punishing the defendant, rather than offered for a compensatory purpose.**

\* \* \*

**There is no recognized unit value for pain and suffering or disability. Compensation for pain and suffering or disability is solely within your province in the event you find for plaintiff.**

(Doc. No. 72 at 11-13).

{¶30} At the conclusion of the trial, the jury signed a general verdict finding "the issues in this case in favor of the plaintiff, Marcia Hacker, and against the defendant, Ardell Roddy, and do award damages in the total amount of: $1,183.00". (Doc. No. 61).

{¶31} In jury interrogatory #1, the jury was asked "[w]as the Defendant Ardell Roddy's negligence a direct and proximate cause of any injury/damage to the Plaintiff Marcia Hacker?" (Doc. No. 65). All members of the jury circled "YES" on this interrogatory. (Id.).

{¶32} In jury interrogatory #6, question 1, the jury was asked to "[s]tate the amount of Plaintiff Marcia Hacker's compensatory damages that represents past damages for economic loss." (Doc. No. 70). All members of the jury signed the interrogatory stating "$1,183.00" to be the amount of Marcia's economic loss. (Id.). In the same interrogatory, question 2, the jury was asked to "[s]tate the

amount of Plaintiff Marcia Hacker's compensatory damages that represents past damages for non-economic loss." (Id. at 2). All members of the jury signed the interrogatory stating "$0.0" to be the amount of Marcia's non-economic loss. (Id.).

{¶33} In rendering its decision to grant a new trial, the trial court relied on two prior cases from this Court to invalidate the jury's award in this case. (*See* Doc. No. 92, citing *Miller v. Irwin*, 49 Ohio App.3d 96 (3d. Dist. 1988); *Guckes v. Feusner*, 3d Dist. Hancock No. 5-95-39 (March 22, 1996). While both *Miller* and *Guckes* involved motor vehicle accidents in which the plaintiffs' vehicles were struck from behind by the defendants' vehicles, we find the facts supporting the result in those cases to be distinguishable from the facts in the case at hand.

{¶34} In *Miller*, the defendant admitted liability prior to trial and the only issue litigated was the amount of damages owed to the plaintiff. *Id*. at 97. The *unrefuted evidence* established that the plaintiff lost wages in the amount of $16,996.60 and incurred medical expenses of $2,316.76 as a result of the accident, a total of $19,313.36 in "special injuries." The *unrefuted evidence* also demonstrated the severity of the plaintiff's injuries as a result of the accident—specifically, that he had to endure several months of physical therapy, and was not released from his physician's care and not permitted to return to work until thirty-four weeks after the accident occurred. The court in *Miller* reversed the trial court

and concluded that a new trial was warranted because the jury's award of $7,000.00 in damages was inadequate to compensate the plaintiff in light of the uncontroverted evidence: 1) indicating that the plaintiff had endured some pain and suffering as a result of his injuries; and 2) establishing that the plaintiff's special injuries were a minimum of $19,313.36.

{¶35} In *Guckes*, the jury returned a verdict in favor the plaintiff and awarded him $4,466.00. *Guckes* at *1. The trial court granted a new trial on the ground that the award was against the manifest weight of the evidence because the jury "failed to consider the pain and suffering element of plaintiff's damages." *Id.* During deliberations, the jury was given one interrogatory stating:

> **If you signed the general verdict form for the plaintiff and returned an award for compensatory damages, state in dollars the total medical expenses you find were suffered by the plaintiff as a part of the entire damage award which is the result of the defendant's negligence, if any.**

*Id.* The jury answered the interrogatory by stating that the entire award of $4,466.00 was for the Plaintiff's medical expenses—notably the medical expenses admitted at trial totaled $8,933.00. Upon its review, The court in *Guckes* found the trial court's decision to grant a new trial was not an abuse of discretion and concluded "[i]t is evident that the jury awarded Guckes the special damages of half his medical expenses but did not consider his general damages of pain and

suffering." *Id.* at *2. The court specifically relied on *Vanbuskirk v. Pendleton*, 3d Dist. Crawford No. 3-79-14 (Jan. 18, 1980).

{¶36} In *Vanbuskirk*, the court determined under the particular facts of that case that the jury's only award for the specific amount of a medical bill without any amount attributed to pain and suffering was against the manifest weight of the evidence. *Vanbuskirk* at *4-5. The court reasoned that "[a]lthough there was conflicting evidence as to loss of earnings, loss of earning capacity and the existence of any permanent disability there was no conflict as to the specific amount of the doctor's bill," which was the only measure of damages awarded. *Id.* at *4. The court further observed that "[w]hile the jury could have by virtue of issues of credibility and conflicting testimony eliminated many other bases for damage it is impossible to eliminate the necessity of a finding of *some* even though minimal amount of pain as a predicate for this medical treatment." *Id.* at *5.

{¶37} Unlike, in *Guckes* and *Vanbuskirk*, there is no clear indication in the case before us that the jury award of $1,183.00 represents only Marcia's medical expenses. Marcia testified that she was seeking compensation for both medical expenses and lost wages as a result of the injury she claimed to have sustained in the motor vehicle accident with Ardell. Both of these measures of damages were included in the category of "economic damages" instructed by the trial court in the

jury charge.[1] Moreover, unlike in *Miller*, there was no unrefuted evidence presented at trial regarding either the cause and extent of Marcia's injury or the minimum amount of damages she incurred as a result of her injury. Rather, the parties consistently disputed both of these issues throughout the trial court proceedings.

{¶38} Accordingly, we are unable to conclude that our prior case precedent is dispositive to resolve the issues raised regarding the jury's award in this case. On the contrary, given the evidence at trial, the jury's award of $1,183.00 in economic loss appears to be an arbitrary number with no support in the record. The medical bills admitted as evidence reflected that the total amount of the charges were $4,675.26 and that the amount which remained Marcia's responsibility after insurance was applied was $2,366.66. To further complicate matters, defense counsel in closing argument made references to Marcia's medical expenses being $4,096.00 and stated that any "award of more than double the $4,096.00 in medical bills would simply be an injustice." (Doc. No. 98 at 335, 341). With regard to lost wages, Marcia testified that at the time of the accident she earned $9.46/hour and estimated that she missed 72 hours of work for the

---

[1] As previously stated, in Interrogatory # 1, the jury expressly found that Ardell's negligence was "a direct and proximate cause of any injury/damage to the Plaintiff Marcia Hacker." Therefore, trial court's assessment that the $1,183.00 could have only represented medical expenses because "an award of lost wages could not be given without a finding of liability for injury" is not supported by the record.

months of February and March 2009.[2]   She testified that she was seeking compensation for lost wages for the three months after the accident she did not work due to her injury.  (Doc. No. 96 at 106-107).  Notably, Marcia's testimony was the only evidence of her lost wages presented at trial.

{¶39} Despite all of this, the jury arrived at an award of $1,183.00. Interestingly, this number is roughly half of the amount Marcia remained responsible for on the medical bills submitted to the jury, which suggests that: 1) the jury improperly took Marcia's insurance coverage and subrogated interest into consideration; and/or 2) they improperly considered the issue of comparative negligence and apportioned the award based on some degree of negligence that they attributed to Marcia; and/or 3) the jury undertook some other arbitrary, formulaic approach in arriving at their verdict.

{¶40} Notably, the appellants speculate that Marcia's past diagnosis of mild arthritis in her neck and a family history of migraine headaches suggest that the jury reduced Marcia's award for medical expenses based on their conclusion that her injury was in part attributable to a preexisting-condition.  However, with the exception of Dr. Kentris' bill for chiropractic treatment, the only evidence of medical expenses submitted to the jury were the medical bills that Marcia incurred as a result of her emergency room visit immediately following the accident.  Thus,

---

[2] Based on Marcia's testimony, her lost wages for February and March would have been $2,082.24.

these medical expenses were incurred as a direct consequence of Ardell rear-ending her vehicle and causing the collision on January 7, 2009.

**{¶41}** We believe all the circumstances outlined above clearly distinguish this case from the approach taken by the Tenth Appellate District in *Welch v. Ameritech Credit Corp.*, 10th Dist. Franklin No. 04AP-1123, 2006-Ohio-2528. In *Welch*, the appellate court upheld the trial court's denial of a motion for a new trial after the jury only awarded the appellant the cost of her emergency room visit and no further damages for pain and suffering. *Id.* at ¶ 12. However, the evidence in *Welch* notably established that the appellant was involved in three prior motor vehicle accidents from which she still suffered physical consequences when the collision at issue in the case occurred. *Id.* at ¶¶ 2-6. The matter in dispute during the eighteen-day trial was whether the appellant's injuries were proximately caused by the most recent collision or whether her injuries were attributable to the prior accidents. *Id.* at ¶ 12. Both sides presented extensive medical evidence in support of their respective positions. *Id.* at ¶¶ 13-27. As a result, the court in *Welch* concluded that a verdict is not automatically against the manifest weight of the evidence when there is an award for medical expenses without an award for pain and suffering, because the assessment of damages is a matter within the province of the jury. *Id.* at ¶ 43.

{¶42} In contrast to the special set of circumstances in *Welch* and regardless of how the jury arrived at their verdict, the fact remains that the award in the case before us cannot be reconciled with any rational interpretation of the evidence in the record.  For all these reasons, we do not find the trial court's decision to grant a new trial to be an abuse of discretion.

{¶43} Accordingly, the first assignment of error is overruled and the judgment of the Hancock County Court of Common Pleas is affirmed.

*Judgment Affirmed*

**PRESTON, P.J. and ROGERS, J., concur.**

**/jlr**