[Cite as *Dolan v. Glouster*, 2014-Ohio-2017.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
ATHENS COUNTY


DAVID DOLAN, et al.,        :        Case Nos. 11CA18
                                     11CA19

Plaintiffs-Appellees,     :        11CA33
      Cross-Appellants,          12CA1
                      :        12CA6

     vs.
                      :

CITY OF GLOUSTER[1], OHIO et al.,    DECISION AND JUDGMENT ENTRY
                      :

    Defendants-Appellants,
    Cross-Appellees.       :

_____

APPEARANCES:

COUNSEL FOR APPELLANTS:    Randall L. Lambert, Lambert Law Office,
                   215 South Fourth Street, P.O. Box 725,
                   Ironton, Ohio 45638


COUNSEL FOR APPELLEES:    Robert C. Paxton, II, Robert C. Paxton
    & Associates, 2142 Riverside Drive,          Columbus, Ohio 43221

_____

CIVIL APPEAL FROM COMMON PLEAS COURT
DATE JOURNALIZED:5-5-14
PER CURIAM.

---

[1] We acknowledge that Glouster is frequently referred to during the trial court proceedings as a "village." However, because Glouster was characterized as a city in the complaint(s), as well as in the trial court's various judgment entries, we do so here as well for the sake of consistency.

[Cite as *Dolan v. Glouster*, 2014-Ohio-2017.]

{¶ 1} This is a combination of five consolidated appeals from a number of Athens County Common Pleas Court judgments on claims originally brought by David Dolan and Jennifer Dolan[2], plaintiffs below and cross-appellants herein, against, inter alia, Robert Funk, the Mayor of Glouster, David Angle, Glouster's previous Mayor, and Roger Taylor, Glouster's Chief of Police, (the Glouster parties) defendants below and appellants herein.[3] The Glouster parties assign the following errors for our review:

> FIRST ASSIGNMENT OF ERROR:
>
> "THE TRIAL COURT ABUSED ITS DISCRETION BY UPHOLDING THE JURY'S FINDING THAT THE GLOUSTER DEFENDANTS/APPELLANT'S TORTIOUSLY INTERFERED WITH THE ALLEGED BUSINESS RELATIONSHIP BETWEEN JD'S TOWING AND THE VILLAGE OF GLOUSTER."
>
> SECOND ASSIGNMENT OF ERROR:
>
> "THE TRIAL COURT ABUSED ITS DISCRETION BY PERMITTING EVIDENCE AND TESTIMONY AT TRIAL THAT WAS IMPROPER BECAUSE IT WAS INACCURATE AND MISLEADING."
>
> THIRD ASSIGNMENT OF ERROR:
>
> "THE TRIAL COURT ABUSED ITS DISCRETION BY PERMITTING THE PLAINTIFFS/APPELLEES TO FILE A THIRD AMENDED COMPLAINT."

---

[2] David Dolan brought this action in his individual capacity and as d/b/a "JD's Towing." For the sake of simplicity, we refer to all three complainants collectively as "the Dolans."

[3] Although the Dolans refer to themselves as "appellants" in both their first Notice of Appeal (Case No. 11CA19) and in their briefs, they are actually "cross-appellants." Appellants are the parties who filed the initial appeal, whereas cross-appellants are the parties who file the secondary appeal. See *Black's Law Dictionary* 338 5th Ed.1979)(definition of a "cross-appeal"). The "Glouster parties," as we discuss later in the opinion, filed their first Notice of Appeal on July 5, 2011 (Case No. 11CA18), whereas the Dolans filed their first appeal the next day. Although understandable that the Dolans did not know that the opposing side filed an appeal the previous day, their use of the term "appellants" in their briefs adds to the confusion.

FOURTH ASSIGNMENT OF ERROR:

"THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT RE-JOINED GLOUSTER DEFENDANTS/APPELLANTS ROBERT FUNK AND ROGER TAYLOR AFTER THEY HAD BEEN DISMISSED."

FIFTH ASSIGNMENT OF ERROR:

"THE TRIAL COURT ABUSED ITS DISCRETION BY PERMITTING DAVID AND JENNIFER DOLAN TO TESTIFY CONCERNING LOST PROFITS WITHOUT HAVING A SPECIFIC MATHEMATICAL FORMULA OR SUFFICIENT PROOF TO ESTABLISH THE AMOUNT OF LOST PROFITS."

SIXTH ASSIGNMENT OF ERROR:

"THE TRIAL COURT ABUSED ITS DISCRETION BY PERMITTING THE ISSUE OF PUNITIVE DAMAGES TO GO TO THE JURY WHEN THE EVIDENCE FAILED TO ESTABLISH ANY MALICE ON THE PART OF THE GLOUSTER DEFENDANTS/APPELLANTS."

SEVENTH ASSIGNMENT OF ERROR:

"THE TRIAL COURT COMMITTED REVERSIBLE ERROR BY FAILING TO GRANT A COMPLETE NEW TRIAL AFTER DETERMINING THAT THE ORIGINAL DAMAGES AWARDED TO THE PLAINTIFFS/APPELLEES WERE TAINTED BY PASSION AND PREJUDICE."

EIGHTH ASSIGNMENT OF ERROR:

"PLAINTIFFS/APPELLEES ASSERTED THEIR CLAIMS AGAINST THE GLOUSTER DEFENDANTS/APPELLANTS BEYOND THE TIME PERMITTED BY THE APPLICABLE STATUTES OF LIMITATION, AND AS A RESULT, THE TRIAL COURT COMMITTED REVERSIBLE ERROR BY FAILING TO DISMISS THESE CLAIMS."

NINTH ASSIGNMENT OF ERROR:

"THE TRIAL COURT COMMITTED REVERSIBLE ERROR BY FAILING TO FIND THAT THE GLOUSTER DEFENDANTS/APPELLANTS WERE IMMUNE FROM LIABILITY IN THEIR INDIVIDUAL CAPACITIES."

{¶ 2} The Dolans posit their own cross-assignments of error as follows[4]:

FIRST CROSS-ASSIGNMENT OF ERROR:

"THE TRIAL COURT COMMITTED ERROR WHEN IT GRANTED DEFENDANTS A NEW TRIAL ON THE ISSUE OF EMOTIONAL DISTRESS DAMAGES BY HOLDING THAT THE AWARD WAS INFLUENCED BY PASSION AND PREJUDICE."

SECOND CROSS-ASSIGNMENT OF ERROR:

"THE TRIAL COURT COMMITTED ERROR WHEN IT GRANTED DEFENDANTS A NEW TRIAL ON THE ISSUE OF PUNITIVE DAMAGES, HOLDING THAT THE AWARD WAS INFLUENCED BY PASSION AND PREJUDICE."

THIRD CROSS-ASSIGNMENT OF ERROR:

"THE TRIAL COURT COMMITTED ERROR WHEN IT GRANTED DEFENDANT, ROGER TAYLOR'S MOTION FOR JUDGMENT NOTWITHSTANDING THE VERDICT."

FOURTH CROSS-ASSIGNMENT OF ERROR:

"THE TRIAL COURT COMMITTED ERROR IN FAILING TO ADDRESS THE LEGAL CONCEPT OF "LODESTAR" AS SET FORTH IN BITTNER V. TRI-COUNTY TOYOTA, INC. (1991) 58 OHIO ST.3D, WHEN COUNTER EVIDENCE WAS NOT PRESENTED."

---

[4] The Dolans' brief does not contain a separate statement of the assignments of error as App.R. 16(A)(3) requires. Consequently, we take these assignments of error from the brief's table of contents.

FIFTH CROSS-ASSIGNMENT OF ERROR:

"THE TRIAL COURT ERRED IN OVERRULING PLAINTIFFS'
MOTION FOR PRE-JUDGMENT INTEREST."

**{¶ 3}** In view of this case's factual and procedural complexity, we set forth a relatively brief recitation of the trial court proceedings. The Dolans began their towing business in Morgan County in 1998. A growing part of their business came from the Glouster area in Athens County, to which they moved in 2001.[5]

**{¶ 4}** Prior to 2002, when a tow was needed Glouster police officers used their discretion regarding which tow company they contacted. However, only two tow companies existed in Glouster at that time and the Dolans received a considerable amount of the business. After two more tow companies began operations and wanted a share of the business, in 2002 Glouster adopted a rotation system whereby one tow company received all calls during a particular month, then another tow company rotated in the following month.[6] Apparently, this system led to a sharp decline in the Dolans' business.

---

[5] The Dolans contended that the defendants encouraged them to move to Glouster to obtain additional business from the city, but the Glouster parties deny that they encouraged them to move, moreso than they would for any other business to increase the tax base.

[6] Glouster Chief of Police Roger Taylor explained that a call rotation system, rather than a monthly rotation system, would have been impractical because of difficulties in communication between the night shift and the day shift dispatchers and the police.

{¶ 5}    After several companies complained, including the Dolans, Glouster abandoned the monthly rotation system and returned to its prior system to allow police officers to use their discretion as to which tow company to contact.[7]

{¶ 6}    Although it is unclear if the abandonment of this monthly rotation system had any impact on their business, the Dolans claim that the fall-out from what is characterized as the "Chalfant incident" all but destroyed their business with Glouster and considerably reduced the amount of Athens County tows.   This incident began after Ronald Chalfant, Jr.'s 2003 arrest for driving under the influence and the Dolans towed and impounded Chalfant's car.[8]   When Chalfant's father attempted to pay the fee and retrieve the car, he became upset over the amount of the fees and complained to then mayor David Angle.   Angle, in turn, called the Dolans and asked them how much they charge for vehicle towing and impoundment under circumstances similar to those that applied to Chalfant.   Allegedly, Angle was told that a lesser amount would typically apply.   When Angle asked the Dolans why Chalfant was charged more, the Dolans reportedly said it was because "he" (Chalfant) was an "asshole."   Angle informed the Dolans that they could not treat people that way and the Dolans reportedly responded that it is their business and they could do as they please.[9]   Whatever the circumstances, the evidence adduced

---

[7] The one exception was that if a vehicle owner requested the services of a particular tow company, the police would accede to those wishes and call that particular company.

[8] David Dolan testified to the occurrence of two "Chalfant" incidents.   The first occurred approximately two months before the February 1, 2003 incident and involved an improperly parked motor vehicle in front of a dumpster.   When the Dolans were called to tow the vehicle, Chalfant reportedly acted in a belligerent manner.   From the testimony, however, it is impossible to ascertain if the individual being towed was "Chalfant" Sr. or "Chalfant" Jr.

[9] The Dolans disputed this version of the events.   Although the Chalfants claimed that their towing/impoundment bill was roughly $150, the Dolans claimed it was $70 and not adjusted upward for any reason.

at trial revealed that the number of "tows" that Glouster assigned to the Dolans declined precipitously thereafter.[10]   The tows they received from Athens County were also greatly diminished which together, according to the Dolans, led to considerable financial hardship for the family.

{¶ 7}   The Dolans commenced this action on March 31, 2005 against the Glouster parties, as well as various other defendants.[11]   The complaint set forth sixteen "counts," but the gist of their allegations, for purposes of this appeal, is that the Glouster parties interfered with the business relationship that the Dolans built with the city of Glouster and Athens County and, thus, injured their profitability.   The Dolans requested, inter alia, compensatory and "exemplary" damages, as well as attorney fees.   The defendants denied liability.

{¶ 8}   On April 4, 2006, the trial court, pursuant to Civ.R. 12(C), granted the "Athens County defendants" (defined as the Athens County Commissioners as well as Douglas Bentley) judgment on the pleadings.   This Court affirmed, in part, and reversed, in part, that judgment and remanded the case to the trial court for further proceedings.   See *Dolan v. Glouster*, 173 Ohio App.3d 617, 2007-Ohio-6275, 879 N.E.2d 838 (4th Dist.) (*Dolan I*).   This Court largely agreed with the trial court's grant of a Civ.R. 12(C) judgment, but held that the trial court erred in finding that Douglas Bentley could not be held liable, in a personal capacity, as Athens County

---

[10]   Although little mentioned in the briefs, the so-called "Fierce incident," wherein the parties described an individual named Fierce who drove around Glouster and the surrounding areas with a sign on the back of a truck that accused the Dolans of stealing from them, may have also contributed to the decrease in the Dolans' business.

[11]   Those other defendants included (1) the City of Glouster itself, (2) the City "by and through" its current Mayor, (3) the Glouster City Council, (4) the Athens County Commissioners, (5) Doug Bentley, the 911 Coordinator for Athens County, and (6) four unidentified "John Doe" defendants.

911 coordinator. Id. at ¶¶33-38. We remanded the matter to the trial court for further proceedings consistent with that opinion.[12]

{¶ 9} The case sub judice eventually came on for jury trial over seven days in September and October 2010. As aforesaid, the gist of the Dolans' claims is that the Glouster parties tortiously interfered in the business relationship they had with (1) the City of Glouster, and (2) Athens County. The evidence adduced at trial was uncontroverted that no contractual relationship existed between the Dolans and the City of Glouster, or, for that matter, Athens County. However, the evidence suggested the existence of a less formal relationship between the parties and that the Dolans provided tow services for Glouster and Athens County.

{¶ 10} David Dolan, to say the least, provided the most uneven testimony during these proceedings. Jennifer Dolan provided the strongest testimony and stated that the Dolans believed that they "had a business relationship with Glouster." David Dolan testified, however, only that he believed that they had a "good relation with Glouster." On the other hand, the Glouster parties all testified to the effect that no business relationship existed between the Dolans and Glouster.

{¶ 11} The primary issue at the seven day jury trial was whether, assuming that a business relationship did exist between the Dolans and the Glouster parties, that the Glouster parties had wrongly interfered with that relationship. It was uncontroverted that the Dolans' tows were greatly diminished (1) as a result of the monthly rotation system, and (2) after the rotation system was abandoned and the city returned to a discretionary system that followed the

---

[12] The trial court granted summary judgment to Douglas Bentley on November 25, 2008. That judgment was not appealed and Bentley is no longer a party to these proceedings.

"Chalfant incident." The Dolans' argument, on the latter point in particular, is that the Glouster parties purposely interfered with the decision to assign them any tows. Moreover, they introduced evidence to show that someone removed a sign in town to promote the Dolans' business and actually placed their sign in a city building.

{¶ 12} The Glouster parties adduced considerable conflicting evidence and all testified that the decrease in tows had nothing to do with the "Chalfant incident," but rather due to the general disagreeableness of the Dolans. For example, Ronald Chalfant, Sr. testified for the Glouster parties and characterized David Dolan as "mouthy." Lucas Mace, a Glouster police officer, testified that David Dolan's "attitude" was so bad that neither he nor anyone else could stand to deal with him. Officer Mace testified that David Dolan was rude to other officers, refused to clean up a tow scene on occasion and that people who had their cars towed and impounded by his company accused him of "riffling" through their property in the vehicle.

{¶ 13} Other witnesses also testified that Giffin towing, another local company, was faster to the scene than the Dolans and were more pleasant to deal with. Witnesses for the Glouster parties testified that, on the one hand, if vehicle owners requested the Dolans, the police would contact the Dolans to tow the cars. On the other hand, when the question of which company to call was left to police discretion, police oftentimes called another company. Mace related that, although he used the Dolans prior to the rotation system, he stopped using them after the system was abandoned. More important, none of the Glouster parties or their witnesses testified that city council, the mayors or the chief of police instructed them to stop using the Dolans for tows.

{¶ 14} In the end, the jury returned from deliberations with interrogatories and verdicts

that favored the Dolans.   The trial court entered judgment on October 20, 2010 and awarded the Dolans damages against the Glouster parties as follows: (1) $115,000 in compensatory damages against Angle (inclusive of $20,000 for lost profits, $20,000 for consequential damages and $75,000 for emotional distress), as well as $150,000 in punitive damages; (2) $115,000 in compensatory damages against Funk (inclusive of $20,000 for lost profits, $20,000 for consequential damages and $75,000 for emotional distress), as well as $150,000 in punitive damages; and (3) $210,600[13] in compensatory damages against Taylor, with $300,000 in punitive damages.

{¶ 15}  All of the Glouster parties filed motions for (1) judgment notwithstanding the verdict (JNOV) pursuant to Civ.R. 50, (2) new trial pursuant to Civ.R. 59, and (3) remittitur of damages awarded against them.   The Dolans filed a motion for pre-judgment interest pursuant to R.C. 1343.03(C).

{¶ 16}  On June 8, 2011, the trial court filed a twenty-one page decision on the post-trial motions.   The court overruled all the JNOV motions, with the exception of one regarding the verdict that Taylor interfered with the Dolans' business relationship with Athens County.   The court entered judgment in Taylor's favor on that claim notwithstanding the verdict.

{¶ 17}  The trial court also granted the motion for new trial for all Glouster parties as to the punitive damage awards and compensatory damage awards for emotional distress, but denied the motions on all other issues.   The court also denied the motion for remittitur of damages.

_____

[13]  The compensatory damages against Taylor are in two parts.     First, for interfering in their business relationship with Glouster, the Dolans were awarded $130,000 (inclusive of $25,000 in lost profits, $25,0000 in consequential damages and $80,000 for emotional distress).     Second, for interfering with their business relationship with Athens County, the Dolans were awarded $80,600 (inclusive of $15,600 in lost profits, $25,000 in consequential damages and $40,000 for emotional distress).

The court then set a hearing date to determine the amount of attorney fees and to rule on the prejudgment interest motion. Finally, the trial court made a Civ.R. 54(B) finding of "no just reason for delay."

{¶ 18} On July 5, 2011, the Glouster parties filed an appeal from that judgment (Athens App. No. 11CA18). The following day, the Dolans' filed their notice of appeal from the trial court's judgment (Athens App. No. 11CA19). On September 8, 2011, the Glouster parties filed a motion for new trial, or, alternatively, to ask the trial court to reconsider its decision to grant them a new trial on damages only. The court overruled that motion on September 29, 2011.

{¶ 19} On December 6, 2011, the trial court denied the Dolans' motion for prejudgment interest. The Dolans filed their second appeal from that judgment on December 29, 2011 (Athens App. No. 11CA33). On December 15, 2011, after several hearings regarding attorney fees, the trial court filed a "partial judgment entry" on the issue that disallowed some of the fees the Dolans' counsel requested and instructed them to submit a revised statement based on that ruling and granted the Glouster parties a week to respond. Despite the interlocutory nature of that judgment, the Glouster parties filed another notice of appeal from that order on January 3, 2012 (Athens App. No. 12CA1). On January 20, 2012, the trial court awarded the Dolans $95,553.33 in attorney fees. The Dolans filed their third appeal from that entry on February 15, 2012 (Athens App. No. 12CA6).

{¶ 20} This Court, sua sponte on February 23, 2012, consolidated all five appeals for purposes of final resolution. Consequently, we believe that all of the errors and cross-assignments of error are now properly before us for review and determination.

## I. <u>Jurisdictional Issue(s)</u>

{¶ 21} Before we address the assignments of error on their merits, we must first take note of several jurisdictional issues. Courts of appeals have jurisdiction over final appealable orders. Ohio Constitution, Article IV, Section 3(B)(2). A final order is one that, inter alia, resolves the pending claims in a case and, in effect, determines the action. R.C. 2505.02(B)(1). If the order appealed is neither final nor appealable, the appellate court has no jurisdiction to consider it and the appeal must be dismissed. See *State v. Creech*, 4th Dist. Scioto No. 12CA 3500, 2013-Ohio-3791, at ¶11; *Nolan v. Rase*, 4th Dist. Scioto No. 12CA3463, 2012-Ohio-4144, at ¶6.

{¶ 22} Oftentimes, in a complicated case such as this with many parties and many claims, the trial court and the parties understandably tend to lose track of all of the competing claims and may fail to resolve some claims. This is problematic when, as in the case sub judice, multiple amended complaints have been filed and those complaints are somewhat unclear as to whether they simply elaborate on claims already presented in the case, or if they, in fact, assert new claims.

{¶ 23} One point of concern are the four "John Doe" defendants against whom counts thirteen through sixteen of the original complaint were addressed. The amended complaint, filed February 7, 2006, expressly stated it incorporated the contents of the original complaint. This amended complaint did not set out a list of the defendants and, although it referenced counts thirteen through sixteen from the original complaint, it made no mention of the aforementioned "John Doe" defendants.

{¶ 24} On May 15, 2006, the Dolans filed a motion for leave to file a second amended complaint. It does not appear that the trial court expressly ruled on this motion and that, of

course, technically means that the motion is denied.[14]   However, several defendants filed

amended answers in response and thus treated it as if the complaint had been permitted after all.

This proposed second amended complaint incorporated all the claims of the original complaint

but, again, did not list the party defendants.   It also made no express mention of counts against

the "John Doe" defendants.

{¶ 25}  On October 6, 2009, the Dolans filed yet another amended complaint.   This time,

however, they did not request leave of court.   At first, the trial court ordered the complaint

stricken.   Later, when plaintiffs filed a motion for leave of court, the court granted leave and

allowed the amended complaint.   Practically speaking, this is their third amended complaint.   It,

too, incorporated the original 2005 complaint, but, again, did not list the party defendants or

make reference to the counts in the original complaint against the John Doe defendants.

Moreover, we do not find anything in the record of this case to indicate that those claims have

been resolved.

{¶ 26}  In view of the foregoing, it appears that claims thirteen through sixteen of the first

complaint remain unresolved against the four "John Doe" defendants.   On the one hand, various

Ohio appellate courts have concluded that unresolved claims against unknown defendants

renders a judgment interlocutory and, thus, no final order for purposes of R.C. 2505.02 and

Civ.R. 54(B). See *Nottingham v. Akron Bd. of Edn.*, 81 Ohio App.3d 319, 324 at fn. 2, 610

N.E.2d 1096 (9th Dist. 1992); *United Methodist Church of Berea v. Dunlop Const. Products, Inc.*,

8th Dist. Cuyahoga Nos. 55590 & 56202, 1989 WL 80979 (1989).   On the other hand, this Court

---

[14] Motions not expressly determined in a case are generally deemed to be overruled. See *State v. Payne*, 4th Dist. Ross No. 11CA3272, 2012-Ohio-4696, at ¶22; *In re Sites*, 4th Dist. Lawrence No. 05CA39, 2006-Ohio-3787, at ¶18, at fn. 6.

has concluded that when service of process is not obtained on "John Doe" defendants pursuant to Civ.R. 3(A), any unresolved claims against them do not render the judgment interlocutory. See *Eastley v. Volkman*, 4th Dist. Scioto No. 08CA3223, 2009-Ohio-522, at ¶15.

{¶ 27} After our review of the record in this case, it does not appear that the claims against the four "John Doe" defendants have been resolved. By the same token, it also does not appear that the Dolans identified these defendants or, more important, obtained service on them. Thus, consistent with *Eastley*, supra, we conclude that they are no impediment to our review of this matter.

{¶ 28} Another potential jurisdictional problem is that we find no judgment entry that expressly resolved the claims against Glouster City Council. A July 10, 2006 entry granted partial judgment on the pleadings to what was characterized as the "Glouster defendants," but the trial court identified the "Glouster defendants" as "defendants Village of Glouster, Robert Funk, David Angle and Roger Taylor." Thus, Glouster City Council was technically excluded from the group to whom the court granted partial judgment on the pleadings. We, however, regard this omission as a scrivener's error in the six page decision and judgment. At the outset of its entry, the trial court noted that the motion it was about to decide is the motion filed on April 17, 2006 that began "[n]ow come the defendants . . . Glouster Village Council . . ." (Emphasis added.) The Council, therefore, was a party to the motion that the trial court granted for all but Angle.

{¶ 29} Furthermore, in ruling for all the "Glouster parties" except Angle, the court opined as follows:

"'Tortious interference with business occurs when a person, without privilege,

induces or otherwise purposely causes a third party not to enter into, or continue, a business relationship, or perform a contract with another.' However, the wrongdoer must be a non-party to the contract. Parties to the contract include officers and employees in their official capacities. * * * Glouster's employees and <u>officers</u> would not be subject to this claim for actions undertaken in their official capacity." (Citations omitted.)(Emphasis added.)

{¶ 30} The trial court's references to "employees and officers" would encompass Glouster City Council. There can be no doubt that, had the trial court remembered when it drafted its entry that the Council was a party, it would have dismissed them under the same principles. This, taken together with the fact Glouster City Council joined in the motion that was sustained for all but Angle, leads us to conclude that the July 10, 2006 partial judgment on the pleadings effectively concluded the claims against the Council.

{¶ 31} Therefore, we find some degree of dispository action against all parties. What still is of concern, however, is whether all the claims against those parties have been resolved. While the Dolans' various amended complaints renders the procedure very confusing, after a thorough review of the voluminous record we conclude that it does indeed appear that all claims have been resolved. However, the trial court's June 8, 2011 judgment on the post-trial motions does contain the Civ.R. 54(B) language of "no just reason for delay." This gives us pause. Although the court did not specify what claims and/or parties it thought may remain to be determined in the case, a Civ.R. 54(B) finding suggests that the court believed that residual claims may remain somewhere in the case. The court, however, did not identify what it thought those claims might be and none of the parties have offered any such explanation in their briefs.

{¶ 32} If a finding of "no just reason for delay" is made so that immediate appeals could be taken from the post-trial motions, while the request for prejudgment interest and

determination of attorney fees remained pending, the Civ.R. 54(B) determination is of no avail. At least with regard to attorney fees, that is a part of the Dolans' damages and not an independent claim in and of itself. *Fifth Third Bank v. Rose*, 4th Dist. Gallia Nos. 07CA8 & 07CA9, 2008-Ohio-3919, at ¶¶10-11; *McKee v. Inabnitt*, 4th Dist. Adams App. No. 01CA711, 2001 WL 1913873 (Sep. 26, 2001). Thus, the trial court's finding of no just reason for delay did not render immediately appealable the rulings on the post-trial motions.

{¶ 33} This would account for the five appeals filed in this case (no doubt out of an abundance of caution on counsels' part) when, as the Dolans correctly concluded, no final order existed until the January 20, 2012 judgment that awarded attorney fees. At that juncture, all previous interlocutory orders merged into that one. See e.g. *Rice v. Lewis*, 4th Dist. Scioto No. 11CA3451, 2012-Ohio- 2588, at ¶15; *Clark v. Butler*, 4th Dist. Ross No. 10CA3191, 2011-Ohio- 4943, at ¶8.

{¶ 34} Furthermore, if the trial court certified a finding of no just reason for delay so that its rulings on the motions for new trial could be reviewed while those new trials were pending, it is unnecessary. Orders that grant judgments for new trial are statutorily deemed to be final appealable orders. R.C. 2505.02 (B)(3); also see e.g. *State v. Matthews*, 81 Ohio St.3d 375, 691 N.E.2d 1041 (1998) (applying the same principle but in a criminal context). In short, we are not sure why the trial court included its Civ.R. 54(B) finding when it does not appear from the record that any pending claims remained to be resolved.

{¶ 35} To summarize, after our exhaustive review of the original papers in this case, it appears that all of the claims against all of the parties have been resolved. The exceptions to that are the four John Doe defendants and the Glouster City Council, but, as we indicated supra,

we deemed the claims against those parties disposed of on other grounds.   We also conclude that the January 20, 2012 judgment that awarded attorney fees is the final judgment into which all of the prior, interlocutory orders merged.   Therefore, any and all prior judgments are now properly before us for review and we have jurisdiction to review this case in its entirety.

{¶ 36}  Having concluded that a final appealable order exists in this case, we now turn our attention to the errors that the Glouster parties assign for review and determination.

## II. The Glouster Parties' Assignments of Error

### A. First Assignment of Error

{¶ 37}  The Glouster parties maintain in their first assignment of error that the trial court erred by "upholding" all the jury verdicts against them.   We assume that the gist of their contention is that the trial court erred by not sustaining their motion for JNOV on the question of whether sufficient evidence exists to show that they tortiously interfered with a business relationship between the Dolans and the City of Glouster.

{¶ 38}  Pursuant to Civ.R. 50(B), when a verdict has been rendered for the plaintiffs the test that a trial court must use to determine whether to sustain a motion for judgment notwithstanding the verdict is whether, after the evidence is construed most strongly in favor of the plaintiff, the defendants are entitled to judgment as a matter of law.   See *Daniels v. Fraternal Order of Eagles Aerie of Tecumseh #979*, 162 Ohio App.3d 446, 2005-Ohio-3657, 833 N.E.2d 1253, at ¶12 (2nd Dist., 2005); *Mynes v. Brooks*, 4th Dist. Scioto No. 08CA3211, 2009-Ohio-5017, at ¶25.   A Civ.R. 50(B) motion for JNOV tests the legal sufficiency of the

evidence.   See *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, 972 N.E.2d 517 at ¶25 (a motion for JNOV presents a question of law); *Texler v. D.O. Summers Cleaners & Shirt Laundry Co.*, 81 Ohio St.3d 677, 679, 693 N.E.2d 271 (1998).[15]

**{¶ 39}** Thus, in considering a motion for JNOV, a trial court must construe the evidence most strongly in favor of the non-moving party and deny the motion when some evidence exists to support the non-moving party's case. See *Texler*, supra at 679; *Gladon v. Greater Cleveland Regional Transit Auth.*, 75 Ohio St.3d 312, 318, 662 N.E.2d 287 (1996); *Posin v. A.B.C. Motor Court Hotel, Inc.*, 45 Ohio St.2d 271, 275, 344 N.E.2d 334 (1976).   In so doing, a trial court may not weigh evidence or judge witness credibility. *Osler v. Lorain*, 28 Ohio St.3d 345, 504 N.E.2d 19, at the syllabus (1986); *Ruta v. Breckenridge-Remy Co.*, 69 Ohio St.2d 66, 67-68, 430 N.E.2d 935 (1982).

**{¶ 40}** Generally, a trial court must deny a motion for JNOV if substantial evidence exists upon which reasonable minds could come to different conclusions on the essential elements of the claim. *Posin*, supra at 275; *Ramage v. Cent. Ohio Emergency Serv., Inc.*, 64 Ohio St.3d 97, 109, 592 N.E.2d 828 (1992).   Appellate courts then review a trial court's decision de novo. *Hicks v. Garrett*, 5th Dist. Stark No. 2011CA109, 2012-Ohio-3560, at ¶108; *Gindling v. Schiff*, 1st Dist. Hamilton No. C–100669, 2012-Ohio-764, at ¶14; *Britton v. Gibbs Associates*, 4th Dist. Highland No. 08CA9, 2009-Ohio-3943, at ¶7.

---

[15] Because the determination of whether JNOV is warranted presents a legal question, we apply a de novo standard of review.    See e.g. *Spisak v. Salvation Army,* 8th Dist. Cuyahoga No. 99633, 2013-Ohio-5429, at ¶58; *Meade v. National Bank of Adams County*, 4th Dist. Adams No. No. 02CA733, 2003-Ohio-5747, at ¶30.    In other words, by arguing that the trial court abused its discretion in this matter, the Glouster parties did not set out the correct standard of review in the text of their first assignment of error.

{¶ 41} The Dolans' claims are based on the theory of a tortious interference in a business relationship to provide tow services that they allegedly had with Glouster. The Glouster parties argue that no evidence of a business relationship existed between the Dolans and Glouster. We disagree. Admittedly, the Glouster parties were unanimous in their testimony that no business relationship existed. On the other hand, considerable evidence indicated (at least before the adoption of the monthly rotation system) that the Dolans received a large percentage of the Glouster tows. While David Dolan's testimony on this issue was, at a minimum, confusing, Jennifer Dolan did provide clear and unequivocal testimony that they had a business relationship with Glouster.

{¶ 42} Interestingly, none of the parties has provided us with a precise legal statement for what constitutes a "business relationship" in this context. Moreover, in our own research we have found no definitive explanation of such a relationship in either Ohio law or the law of any other jurisdiction. A "business relationship" does appear to involve an ongoing relationship between two or more parties when there is an expectation of pecuniary advantage. See generally, *Morrison v. Renner*, 5th Dist. Muskingum No. CT2011 –0010, 2011-6780, at ¶26; *Streb v. AMF Bowling Centers, Inc.*, 10th Dist. Franklin No. 99AP-633, 2000 WL 552198 (May 4, 2000); also see *Manna Funding, LLC v. Kittitas County*, 173 Wash.App. 879, 295 P.3d 1197, at ¶34 (Wash.App. 2013); *MacLean v. Ryan*, Wash.App. No. 69548–7–I, 2013 WL 6633745, at fn. 16 (Dec. 16, 2013); *In re Cobb*, N.J.Sup. No. 2011–302, 2013 WL 1187854 (Mar. 25, 2013).

{¶ 43} Here, no question exists that the Dolans received pecuniary advantage (financial renumeration) from their previous dealings with Glouster. This, taken together with Jennifer Dolan's testimony, is sufficient for a reasonable jury to find that a business relationship between

them did, in fact, exist.

{¶ 44} The Glouster parties further argue that even if a business relationship with the Dolans did exist, no evidence exists to show that they interfered with that relationship. Again, we disagree. David Dolan testified that when he refused to modify the charges in the Chalfant incident, Angle told him "I'll make sure your business goes to hell." Moreover, the evidence adduced at trial is uncontroverted that, except for those situations when motorists expressly requested the Dolans, the tows assigned them by the police after the Chalfant incident diminished considerably. David Dolan also testified that shortly after the Chalfant incident, a sign advertising his business (set on wooden posts and sunk into concrete) was removed. When he inquired about what happened to the sign, he found the sign sitting in a city building.

{¶ 45} We defined a tortious interference in *business relationship* in *Dolan I*, supra at ¶¶33-34, as follows:

> "The elements of tortious interference with a business relationship are (1) a business relationship; (2) the tortfeasor's knowledge thereof; (3) an intentional interference causing a breach or termination of the relationship; and (4) damages resulting therefrom. It "includes intentional interference with prospective contractual relations not yet reduced to a contract. [This] interference must be intentional, not negligent. Further, [i]n such cases the law has generally required proof that the defendant has acted maliciously. Because malice is a necessary element of the claim and an exception to an employee's immunity under R.C. 2744.03(A)(6) . . .'" (Citations omitted)

We conclude that David Dolan's testimony concerning what Angle purportedly said to him, the removal of the business sign shortly thereafter and the uncontroverted evidence of a drop-off in the business is sufficient for a reasonable trier of fact to find intentional interference in the business relationship between the Dolans and Glouster. We readily acknowledge that it is true that no direct evidence was adduced to show that any of the Glouster parties instructed officers to

cease using the Dolans for towing.   However, the fact that the Glouster parties operated in supervisory roles over police provides considerable circumstantial evidence that this interference occurred.   We also hasten to add that nothing in Ohio law prohibits a judgment in a civil case from being based on circumstantial evidence.   See *Abon, Ltd. v. Transcontinental Ins. Co.*, 5th Dist. Richland No. 2004- CA-0029, 2005-Ohio-3052, at ¶38; *Xenia Pizza, Inc. v. Donahue*, 2nd Dist. Montgomery No. 8853, 1985 WL 8732 (Jun. 24, 1985).

**{¶ 46}** We also readily acknowledge that the Glouster parties denied telling police not to use the Dolans and that some of the officers denied that they were told not to use the Dolans. However, the jury, sitting as the trier of fact, is free to believe all, part or none of the testimony of any witness who appears before it.   *Khayyam Publishing Co. v. Marzvann*, 4th Dist. Athens No. 12CA29, 2013-Ohio-5332, at ¶24; *Hawkins v. Creech*, 4th Dist. Adams No. 12CA938, 2013-Ohio-1318, at ¶20; *Burchett v. Mowery*, 4th Dist. Scioto No. 11CA3419, 2012-Ohio-2489, at ¶15.   In the case sub judice, the jury obviously rejected the evidence that the Glouster parties presented and, instead, accepted the evidence that the Dolans presented.   This is well within the jury's province as the trier of fact.

**{¶ 47}** Finally, the Glouster parties challenge the evidence insofar as it supported the maliciousness component that we specified in *Dolan I* as necessary for this particular tort.   They argue that nothing shows malice on their part, or anything to indicate some "factual nexus" between a decline in the Dolans' business and their actions.   We, however, reject this argument for the same reason that we rejected the previous argument.   Evidence that the jury apparently found credible showed Angle threatening to send the Dolans' business operation "to hell." Shortly thereafter, the Dolans' advertising sign disappeared and the number of tows that they

received from Glouster decreased to nothing.   A reasonable jury could find a nexus between the alleged actions of the Glouster parties and the injuries the Dolans suffered.

{¶ 48} Accordingly, for all of these reasons, we find no merit to the first assignment of error and it is hereby overruled.

B. **Second Assignment of Error**

{¶ 49} The Glouster parties maintain in their second assignment of error that the trial court erred by allowing evidence that is "inaccurate, prejudicial and misleading."   We disagree with this contention for several reasons.

{¶ 50} First, App.R. 16(A)(7) requires that an appellate brief include "citations to the authorities" upon which an appellant relies in making their argument.   Here, we find no authority of law that the Glouster parties cite anywhere in this assignment of error.   Moreover, it is not clear that a rule of evidence or any statute prohibited the presentation of any of this testimony and other material.   In any event, App.R. 16(A)(7) permits a reviewing court to simply disregard this assignment of error. *Chiro v. Foley*, 8th Dist. Cuyahoga No. 99888, 2013-Ohio-4808, at ¶30; also see *State v. Herron*, 11th Dist. Lake Nos. 2009-L-119, 2009-L-126, 2009-L- 127, 2009-L-128, 2009-L-129, 2009-L-130, 2009-L-131, 2009-L-132, 2009-L-133 & 2009-L-13, 2010-Ohio-2050, at ¶16 ("It is not the obligation of an appellate court to search for authority to support an appellant's argument as to an alleged error . . . [a]ccordingly, we may disregard an assignment of error that fails to comply with App.R. 16(A)(7).")

{¶ 51} Second, even if we considered the substance of the assignment of error, we would find no merit.   If the evidence that the Glouster parties cite is inaccurate or misleading, that

assertation goes to evidence weight rather than admissibility. See e.g. *State v. McClain*, 5th Dist. Guernsey No. 10–CA–10, 2011-Ohio-1623, at ¶55; *State v. Bizzell*, 4th Dist. Ross No. 03CA2702, 2003-Ohio-6155, at ¶8. Whatever inaccuracies there may be, or any potential to be misleading, those issues must be addressed on cross-examination and, if there is anything that the lengthy trial transcripts in this case does show, very extensive cross-examination occurred for all of the witnesses.

{¶ 52} Accordingly, for these reasons, we find no merit to this assignment of error and it is hereby overruled.

## C. Third Assignment of Error

{¶ 53} The Glouster parties argue in their third assignment of error that the trial court erred by allowing the Dolans to file a third amended complaint. We disagree.

{¶ 54} Generally, parties may amend their complaint once, as a matter of course, within twenty-eight days after serving the complaint and thereafter only with leave of court. Civ.R. 15(A). Such leave, however, should be freely given. Id. The decision to grant leave lies in a trial court's sound discretion and its decision will not be reversed absent an abuse of that discretion. *McSweeney v. Jackson*, 117 Ohio App.3d 623, 629-630, 691 N.E.2d 303 (4th Dist. 1996); also see *Merchants Natl. Bank v. Overstake*, 4th Dist. Highland No. 11CA18, 2012-Ohio-6309, at ¶17.

Generally, an "abuse of discretion" is more than an error of law or judgment; rather, it implies that a court's attitude is unreasonable, arbitrary or unconscionable. *State v. Herring*, 94 Ohio St.3d 246, 255, 762 N.E.2d 940 (2002); *State v. Adams*, 60 Ohio St.2d 151, 157, 404 N.E.2d

144 (1980). Additionally, in reviewing for an abuse of discretion, appellate courts must not substitute their judgment for that of the trial court. *State ex rel. Duncan v. Chippewa Twp. Trustees*, 73 Ohio St.3d 728, 732, 654 N.E.2d 1254 (1995); *In re Jane Doe 1*, 57 Ohio St.3d 135, 137-138, 566 N.E.2d 1181 (1991). Further, to establish an abuse of discretion, the result must be so palpably and grossly violative of fact or logic that it evidences not the exercise of will, but perversity of will; not the exercise of judgment, but defiance of judgment; not the exercise of reason, but, instead, passion or bias. See *Vaught v. Cleveland Clinic Found.*, 98 Ohio St.3d 485, 787 N.E.2d 631, 2003- Ohio-2181, ¶13; *Nakoff v. Fairview Gen. Hosp.*, 75 Ohio St.3d 254, 256, 662 N.E.2d 1 (1996). In the case sub judice, the trial court granted the Dolans (retroactively) leave to file their third amended complaint some ten months before the trial. We believe that the Glouster parties had sufficient time to respond to the allegations and we find no indication that they suffered any prejudice as a result of the third amended complaint.

{¶ 55} We also note that the only authority that the Glouster parties cite to support their argument is *Helman v. EPL Prolong, Inc.*, 139 Ohio App.3d 231, 743 N.E.2d 484 (7th Dist. 2000). That case involved review of a trial court's refusal to allow an amendment of a complaint. Id. at 250-252. Had we reviewed the trial court decision in *Helman*, we, too, may have arrived at the same result. Again, the "abuse of discretion" standard of review is a "highly deferential" standard of review. *Grimes v. Grimes*, 4th Dist. Washington No. 10CA23, 2012-Ohio-3562, 975 N.E.2d 496, at ¶16, fn. 5; *Habo v. Khattab*, 11th Dist. Portage No. 2012–P–0117, 2013-Ohio-5809, at ¶55; *Rarden v. Rarden*, 12 Dist. Warren No. CA2013–06– 054, 2013-Ohio-4985, at ¶10.

{¶ 56} The application of the abuse of discretion standard will potentially allow for

different outcomes depending on a trial court's decision.   Thus, had the trial court in this case denied leave to file an amended complaint, we could have deferred to its decision unless it was demonstrated that the decision was arbitrary, unreasonable or unconscionable as did the *Helman* court.   Nevertheless, just as the *Helman* court found no abuse of discretion, we have not been persuaded that anything arbitrary, unreasonable or unconscionable exists in the trial court's decision to allow the third amended complaint.   Moreover, our ruling is buttressed by the fundamental principle that cases should be decided their merits when possible, rather than on pleading practice technicalities.   See *New Falls Corp. v. Pierson*, 12th Dist. Clermont No. CA2013–03–023, 2014-Ohio-567, at ¶6; *ABN AMRO Mtge. Group, Inc. v. Evans*, 8th Dist. Cuyahoga No. 90499, 2008-Ohio- 4223, at ¶19.

**{¶ 57}** Here, the Dolans filed their third amended complaint to make sure that all of their theories of recovery were properly before the court.   There being no apparent prejudice to the Glouster parties, we find no merit to their third assignment of error and it is hereby overruled.


**D. Fourth Assignment of Error**

**{¶ 58}** A resolution of the fourth assignment of error requires an additional factual recitation.[16]   On July 10, 2006, the trial court entered judgment on the pleadings for Funk and Taylor.   This left Angle as the only Glouster party in the proceeding.   The court's reasoning, in a nutshell, is that although the complaint alleged that Angle is liable in his personal capacity, there were no allegations to show the same was true for either Funk or Taylor.

---

[16] The Dolans do not appear to address this assignment of error in their "answer brief."

{¶ 59} The exceedingly convoluted procedural posture of this case eventually led an understandably exasperated trial court to issue the September 1, 2009 order and ask counsel for both a factual and legal clarification as to whether Funk and Taylor were still parties insofar as potential (personal) liability for tortious interference with a business relationship. Not unexpectedly, the Dolans' memorandum answered this question affirmatively, whereas the Glouster parties' memorandum answered in the negative.

{¶ 60} It does not appear that the trial court filed an entry in response to the questions that it posed in its own entry. However, the Dolans' filed an amended complaint the following month that set out new allegations that Funk and Taylor also acted in their personal capacities in this case. As mentioned above, while the amended complaint was initially struck, it was later reinstated and the parties proceeded to trial against Funk and Taylor as much as Angle. The Glouster parties argue this is error and that the only way the Dolans could proceed against Funk and Taylor at trial is to have successfully appealed the July 10, 2006 judgment on the pleadings in their favor. We disagree.

{¶ 61} First, even if we assume, arguendo, that the trial court erred by allowing the trial to go forward against both Funk and Taylor, we have found no objection in the transcript on the first day of trial. Any error that could have been raised, but was not, at a time when it could have been corrected is deemed waived for purposes of appellate review. See *Portsmouth v. Wrage*, 4th Dist. Scioto No. 08CA3237, 2009-Ohio-3390, at ¶26; *Maynard v. Norfolk S. Railway*, 4th Dist. Scioto No. 08CA3267, 2009-Ohio-3143, at ¶13.

{¶ 62} The Glouster parties also fail to cite anything in the original papers in which they objected to the trial proceeding against Funk and Taylor and we have found nothing to that effect

in our own search.   Hence, any arguable error has been waived.

{¶ 63} Second, the Glouster parties have not persuaded us that any error exists here in the first place.   The July 10, 2006 judgment on the pleadings neither determined the entire action, nor did it contain a Civ.R. 54(B) finding of "no just reason for delay."   That judgment is interlocutory.   This means not only that the Dolans would have been prohibited from an appeal, the judgment could also have been changed any time prior to entry of an order that was final and appealable. *McClure v. Davis*, 186 Ohio App.3d 25, 2010-Ohio-409, 926 N.E.2d 333, at ¶19 (4th Dis.); also see *Zions First Natl. Bank v. Shiva Hospitality, Inc.*, 3rd Dist. Wyandot No. 16–12–12, 2013-Ohio-5666, at ¶20; *Littleton v. Holmes Siding Contr.*, 10th Dist. Franklin No. 13AP–138, 2013-Ohio-5602, at ¶6.   Although the better practice might have been to enter judgment that formally re-introduced Funk and Taylor as parties to the action, the trial court clearly reconsidered (and then reversed) its prior decision to dismiss them from the proceedings. This is well within its authority to control the proceedings and we will not reverse the decision simply because it was made sub silento and unopposed by those whom the decision affected. We also again reiterate the principle that cases should be decided on their merits when possible, rather than on procedural issues.   This is particularly true in cases such as this when the procedural history is extremely convoluted.

{¶ 64} Accordingly, for these reasons, we find no merit to the fourth assignment of error and it is hereby overruled.


**E. Fifth Assignment of Error**

{¶ 65} The Glouster parties argue in their fifth assignment of error that the trial court

erred by permitting the Dolans to testify as to their lost business profits without presenting a specific "mathematical formula" by which to arrive at those profits, or "sufficient proof" to establish them.

{¶ 66} Our analysis begins with an acknowledgment of the precise wording of the assignment of error.   Although the phrase "sufficient proof" is included in the text of the assigned   error, the text itself is couched in terms of the trial court's alleged error in actually allowing the testimony.   Therefore, our concern is not whether insufficient evidence exists to support the jury verdict, but rather whether the trial court erred by allowing the testimony of the Dolans concerning their lost profits.   This distinction is important for several reasons, not the least of which is that in five of the examples the Glouster parties cited in their brief, the testimony to which they object was actually elicited by their attorney, either on cross or re-cross examination.   Thus, even if arguably the testimony should have been excluded, under the invited error doctrine parties cannot take advantage of errors that they invite or induce the trial court to make.   See *Fifth Third Mtge., Co. v. Rankin*, 4th Dist. Pickaway No. 11CA18, 2012-Ohio-2804, at ¶16; *Daugherty v. Daugherty*, 4th Dist. Hocking No. 11CA18, 2012-Ohio-1520, at ¶18; *Lowe v. Lowe*, 4th Dist. Pickaway No. 10CA30, 2011-Ohio-3340, at ¶39.[17]

{¶ 67} Of the remaining instances the Glouster parties cite in their brief, we find no

---

[17] Even if we did consider this assignment of error as a challenge to the sufficiency of the evidence, in a civil case a challenge to the "sufficiency of the evidence" merges into a challenge that a verdict is against the "manifest weight of the evidence." *Thompson v. Allen*, 2nd Dist. Montgomery No. 23292, 2010-Ohio-1133, at ¶8; *Wolfe v. Walsh*, 2nd Dist. Montgomery No. 21653, 2008-Ohio-185 at ¶18.    We have also held that in civil cases we will not reverse a jury verdict as against the manifest weight of the evidence if supported by some competent and credible evidence.    See *Salmons v. Jones*, 4th Dist. Lawrence No. 13CA11, 2013-Ohio- 5417, at ¶11.    Even if we considered this assignment of error in the context of challenging the weight of the evidence that the Dolans introduced below, we would find no merit to the arguments the Glouster parties advanced.

objection in the trial transcript and, thus, it cannot be used as a predicate for assignment of error. Evid.R. 103(A)(1). The gist of their objections to the two remaining instances is that the Dolans were insufficiently specific in testifying about revenue from each tow. David Dolan testified that each tow is worth between $150 to $300. Jennifer Dolan testified that each tow is "no less than a [sic] $100.00 and it could be $250/$300.00."

{¶ 68} Both at the trial level and here on appeal, the Glouster parties cite *Brookeside Ambulance, Inc. v. Walker Ambulance Serv.*, 112 Ohio App.3d 150, 158, 678 N.E.2d 248 (6th Dist. 1996) for the proposition that lost profits must be "proven to a reasonable certainty." Id. They argue that the estimated range of revenues from the Dolans' tows are anything but "reasonable certainty" and, therefore, the trial court erred by overruling their objections. We disagree.

{¶ 69} A determination of whether a lost profits calculation is too speculative lies within the trial court's discretion and its determination will not be reversed absent an abuse of that discretion. See *Illinois Controls, Inc. v. Langham*, 70 Ohio St.3d 512, 526, 639 N.E.2d 771 (1994). As we noted earlier, to find that the trial court abused its discretion by allowing the Dolans to testify, we must find its decision so palpably and grossly violative of fact or logic that it evidences not the exercise of will, but perversity of will; not the exercise of judgment, but defiance of judgment; not the exercise of reason, but, instead, passion or bias. *Vaught*, supra at 2003-Ohio-2181, ¶13; *Nakoff,* supra, 75 Ohio St.3d at 256. We do not find those factors present in the case sub judice.

{¶ 70} Our understanding of the testimony is that when the Dolans spoke of the revenue they received from each tow, they combined at least two separate components: (1) the amount

charged solely for the tow itself;[18] and (2) storage fees for impoundment of the vehicle on their lot.   All tows, as the Dolans testified, are different.   David Dolan explained that most of the time, vehicles are impounded one to five days.   However, on some occasions they would store a vehicle for a month, and had even stored vehicles for eighteen months.

{¶ 71} We emphasize that the *Brookeside Ambulance* court stated only that evidence of lost profits must be "reasonably accurate."   Reasonable accuracy is not the same as "mathematical" accuracy or certainty, thus we reject the claims of the Glouster parties that the Dolans should have produced some kind of formula to prove lost profits.   Given the nature of their business, and that the amount of revenue from each tow could vary widely based on the number of days of impoundment, the trial court apparently concluded that the evidence was reasonable under the circumstances and we find no abuse of discretion in that determination.   In short, the $100 to $150 is as "reasonably accurate" as the facts and circumstances in this case will allow.   Requiring a precise "mathematical formula," as the Glouster parties advocate, simply is not be possible under these circumstances.   Thus, we conclude that the trial court did not abuse its discretion by allowing this testimony to come into evidence.

{¶ 72} Accordingly, the fifth assignment of error is hereby overruled.

**F. Sixth Assignment of Error**

{¶ 73} The Glouster parties argue in their sixth assignment of error that the trial court erred by allowing the issue of punitive damages to go to the jury.   We decline to address this

---

[18] David Dolan testified that the "[b]ase rate tow" was $40 to $50.

argument.

{¶ 74} As noted above, the trial court's June 8, 2011 judgment granted the Glouster

parties' post-trial motion for new trial and vacated the punitive damages award. Therefore, the

Glouster parties no longer suffer any ill-effect from the trial court's decision to give this issue to

the jury. Moreover, appellate courts, do not issue advisory opinions when a case or controversy

no longer exists. *McClead v. McClead*, 4th Dist. Washington No. 06CA67, 2007-Ohio-4624, at

¶12; *State v. Hardesty*, 4th Dist. Pickaway No. 06CA1, 2006-Ohio-5272, at ¶10; *State v. Davis*,

4th Dist. Washington No. 05CA50 at ¶17, 2006-Ohio-3549, fn. 6. Because a new trial has been

granted on the issue of punitive damages, and in view of the fact that the Glouster parties are the

beneficiaries of that decision, no reason exists to address their question of whether sufficient

evidence was adduced to send this particular issue to the jury.

{¶ 75} Thus, based on the foregoing reasons, the sixth assignment of error is hereby

overruled.


**G. Seventh Assignment of Error**

{¶ 76} The Glouster parties argue in their seventh assignment of error that the trial court

erred by not granting their September 8, 2011 motion for new trial on all issues in this case. The

trial court denied their motion solely on grounds that "[b]oth parties have appealed the Court's

decision granting a new trial." The Glouster parties argue that this is error. We affirm the trial

court's decision, albeit for reasons different than those set out in the trial court's 2011 entry.

{¶ 77} The trial court is correct, as an abstract proposition of the law, that "once an

appeal is perfected, the trial court is divested of jurisdiction over matters that are inconsistent

with the reviewing court's jurisdiction to reverse, modify, or affirm the judgment." See *State ex rel. Sullivan v. Ramsey*, 124 Ohio St.3d 355, 2010-Ohio 252, 922 N.E.2d 214, at ¶17.  However, as we discussed in relation to the jurisdictional issues in this case, no final, appealable order existed in the case sub judice until the January 20, 2012 entry that awarded attorney fees.  Thus, as of September 29, 2011 when the trial court overruled the Glouster parties' motion for new trial on all the issues, the trial court retained jurisdiction to consider the Glouster parties' motion and, technically, erred by denying the motion without a review on the merits.

{¶ 78}  Yet, although couched in terms of a motion for new trial on all issues, the Glouster parties also conceded that their motion is in the nature of one for reconsideration of the previous ruling that only granted a new trial insofar as damages are concerned.  The trial court had already denied their request for new trial on all issues and there is little reason to think the court would have changed its view had it considered the substance of the arguments advanced in this new motion.

{¶ 79}  Finally, at least in light of the arguments that the Glouster parties advance in their brief, we find no merit to their second new trial motion.  First, the argument that the finding that punitive and emotional distress damages are the product of "passion and prejudice" necessarily required the trial court to also find that every other component of compensatory damages (as well as a finding of liability itself) is equally the result of "passion and prejudice."  The Glouster parties cite no authority of law to support that argument, however, and we find none in our research.

{¶ 80}  "[T]he nature of punitive damages is different from that of compensatory damages." See *Channell v. N.C.R. Emp. Ind. Union*, 28 Ohio App.2d 260, 263, 277 N.E.2d 85

(2nd Dist. 1971).   Punitive damages are intended to punish and deter behavior such as that

exhibited by the party against which it was imposed. *Telle v. Pasley*, 5th Dist. Delaware No.

12CAE080048, 2013-Ohio-2407, at ¶64; *Stephens v. Grange Mut. Ins. Co.*, 2nd Dist. Clark No.

2011 CA 102, 2012-Ohio-4980, at ¶28; *Tinney v. Tite*, 6th Dist. Huron No. H–11–006,

2012-Ohio-2347, at ¶19.   Similarly, damages for emotional distress are intended to compensate

for "[a] highly unpleasant mental reaction (such as anguish, grief, fright, humiliation, or fury)

that results from another person's conduct[.]" *Granger v. Auto Owners Ins.*, 9th Dist. Summit No.

26473, 2013-Ohio-2792, at ¶14.

{¶ 81}  Suffice it to say that punitive damages and compensatory damages for emotional

distress cover very different, and far more amorphous, injuries than damages for lost profits.

Lost profits can usually be determined with at least some degree of precision, whereas punitive

damages and compensation for emotional distress are less precise.   Thus, the Glouster parties

have not persuaded us the trial court's decision to grant a new trial on one part of the damage

award is logically indicative that it should have granted a new trial on either (1) liability, or (2)

all other forms of damages in the case sub judice.   We further note that in our prior resolution of

the Glouster parties' first and fifth assignments of error, we found sufficient evidence to support

the jury verdicts as to liability and damages for lost profits.   Therefore, the Glouster parties have

not persuaded us that the jury was somehow motivated by passion or bias on these particular

issues.

{¶ 82}  The Glouster parties also cite the Taylor verdict for tortiously interfering with the

Dolans' business relationship with Athens County, and on which the trial court later granted

JNOV, as further proof that the jury was swayed by "passion and prejudice."   We are not

persuaded.   First, carried to its logical conclusion the Glouster parties' argument would mean that anytime JNOV is granted on one issue in a case it must also be granted on every other issue in the case.   We disagree with that view.

{¶ 83}  More important, a good reason existed for granting JNOV for Taylor on a claim of tortious interference with business relations in Athens County, but not granting it for the same tort with regard to Glouster.   The jury concluded that Taylor interfered with the business relationships that the Dolans had with both governing bodies.   However, they may not have understood the hierarchical relations in this case.   Taylor held authority over the police officers in Glouster, but he did not have the same authority over Athens County employees.   This is a distinction that the jury did not make and the trial court correctly granted JNOV when no evidence was adduced that he had such authority.   A trier of fact's failure to discern that distinction should not result in the conclusion that every other finding that it made is erroneous. Had there been evidence that Taylor had any influence or authority over Athens County officials, the result may well have been otherwise.

{¶ 84}  In any event, we do not believe that the trial court's granting of the prior, partial motion for new trial necessitated granting the second motion for new trial (or the motion for reconsideration).

{¶ 85}  Accordingly, for these reasons, the seventh assignment of error is without merit and is hereby overruled.


## H. Eighth Assignment of Error

{¶ 86}  In their eighth assignment of error, the Glouster parties argue that several statutes

of limitations bar the Dolans' claims.   First, they cite the two year statute of R.C. 2744.04(A)[19]

for bringing an action against a political subdivision and argue that this same statute applies to

employees of that subdivision as well.[20]   Then, to pinpoint when the Dolans' claim accrued, they

cite David Dolan's testimony that Angle allegedly stated February 3, 2003 that he would make

sure the Dolan's business would go "to hell" if they did not reduce the tow fees.   Taking the date

of the Angle comment as the starting point, the Glouster parties contend that the Dolans had to

file their complaint no later than February 3, 2005.   Because the complaint was filed on March

31, 2005, the Glouster parties conclude that the statute of limitations had run.   We reject this

argument for several reasons.

{¶ 87} Our analysis begins with the well-settled principle that the assertion that a claim is

barred by the operation of a statute of limitation is an affirmative defense. Civ.R. 8(C): also see

*Johnson v. Waterloo Coal Co.*, 184 Ohio App.3d 607, 2009-Ohio- 5318, 921 N.E.2d 1099, at ¶4

(4th Dist.).   The burden to prove that affirmative defense lies with the party who asserts it. See

*Feller, L.L.C. v. Wagner*, 10th Dist. Franklin No. 11AP–759, 2012-Ohio-5972, at ¶34; *Erie Cty.*

---

[19]   R.C. 2744.04(A) states, in pertinent part, "[a]n action against a political subdivision to recover damages for injury, death, or loss to person or property allegedly caused by any act or omission in connection with a governmental or proprietary function, whether brought as an original action, cross-claim, counterclaim, third-party claim, or claim for subrogation, shall be brought within two years after the cause of action accrues[.]"

[20]   The Glouster parties cite *Read v. Fairview Park*, 146 Ohio App.3d 15, 764 N.E.2d 1079 (2001), for the proposition that this statute applies to employees of a subdivision.     As a preliminary matter, we note that the Ohio Supreme Court does not appear to have ruled on that proposition and the *Read* case is binding only in the Eighth district.     This district addressed the question once, and declined to answer it given that it was not properly raised in the trial court. See *Strahler v. Roby*, 4th Dist. Washington No. 90CA25, 1992 WL 21227 (Jan. 27, 1992).     There has been some expression of doubt in at least one other district as to whether it applies.     See *Davis v. Clark Cty. Bd. of Commrs.*, 994 N.E.2d 905, 2013-Ohio- 2758 at ¶¶32-38 (2nd Dist.) (Froelich, J. Concurring in part, and dissenting in part). Nevertheless, for purposes of our analysis here, we will assume that *Read* does apply.

*Sheriff v. Dalton*, 6th Dist. Erie No. E–10–073, 2011-Ohio-5033, at ¶7; also see *State v. Carter*, 4th Dist. Ross No. 10CA3169, 2010-Ohio-6316, at ¶58 (applying the principle in context of a criminal case).   For the following reasons, we conclude that the Glouster parties have not proven that the statute of limitation(s) had run.

**{¶ 88}** Even if the jury may have accepted Dolan's testimony as true, we are not persuaded that this established an accrual date for the Dolans' claims.   The testimony of David Dolan, to which the Glouster parties cite, stated that Angle had told them that he would make Dolans' business go "to hell" if he did not reduce the fee.   Even if one accepts this statement as true, it is not the same as Angle setting out and taking action to ruin their business at that very moment.   This situation is not the same as a hit-and-run or a slip-and-fall on a snow covered step that can be ascertained with pin-point accuracy.   The Dolans' are claiming a tortious interference with business interests and the argument they advance in their brief alleges such interference occurred on February 3, 2003.   However, the actual interference with the Dolans' business relationship (which was based on Angle, Funk and Taylor allegedly instructing Glouster police not to use them for towing) could have happened days, weeks or months later.   In view of the fact that the Dolans filed their complaint less than two months after the Glouster parties argue that the statute had run, and considering that we have no precise date on which the intentional tort (rather than the Angle comment) occurred, the Glouster parties have not persuaded us that they carried their burden of proof on this issue.

**{¶ 89}** Our ruling on this point is once again buttressed by the Ohio Supreme Court's admonition that cases should generally be decided on their merits when possible.   See e.g. *Whitley v. River's Bend Health Care*, 126 Ohio St.3d 1217, 2010-Ohio-3269, 931 N.E.2d 583, at

¶15; *Internl. Periodical Distrib. v. Bizmart, Inc.*, 95 Ohio St.3d 452, 2002-Ohio-2488, 768

N.E.2d 1167, at ¶7.   Here, we find no evidence as to the actual date on which the action accrued.

 Thus, it is not clear that the R.C. 2744.04(A) two year time period had run.

**{¶ 90}**  The Glouster parties also maintain that to allow the actions to be maintained

against them violated the R.C. 2305.09(D) four year statute of limitations.[21]   Suffice it to say,

however, if we cannot find that the claim violated a two year statute of limitations, we cannot

find they have violated a four year period.

**{¶ 91}**  Therefore, based upon the foregoing reasons the eighth assignment of error is

without merit and is hereby overruled.

**I. Ninth Assignment of Error**

**{¶ 92}**  The Glouster parties argue in their ninth assignment of error that the trial court

erred, presumably in ruling on the motion for directed verdict, by not finding them immune from

any civil liability in their individual capacities.   In support of their argument, they cite R.C.

2744.03 that states, inter alia, as follows:

> "(A) In a civil action brought against a political subdivision or an employee of a
> political subdivision to recover damages for injury, death, or loss to person or
> property allegedly caused by any act or omission in connection with a
> governmental or proprietary function, the following defenses or immunities may
> be asserted to establish nonliability:
>
>              *                     *                   *
>
> (6) In addition to any immunity or defense referred to in division (A)(7) of this
> section and in circumstances not covered by that division or sections 3314.07 and
> 3746.24 of the Revised Code, the employee is immune from liability unless one of

---

[21] This is a four year limitations period for injuries that do not arise out of "contract nor enumerated in sections 1304.35, 2305.10 to 2305.12, and 2305.14 of the Revised Code."

the following applies:

(a) The employee's acts or omissions were manifestly <u>outside the scope of the employee's employment</u> or official responsibilities;" (Emphasis added.)

**{¶ 93}** The determinative issue is whether the tortious interference with the Dolans' business relationship with Glouster falls outside the Glouster parties' scope of employment. We conclude that it does. Generally speaking, Ohio law provides that intentional torts fall outside of the scope of employment. See *Kravetz v. Streetsboro Bd. of Edn.*, 11th Dist. Portage No. 2011–P–0025, 2012-Ohio-1455 at ¶35 (employer's torts against an employee); *Grassia v. Cleveland*, Cuyahoga No. 93647, 2010-Ohio-2483, at ¶23; *Engleman v. Cincinnati Bd. of Educ.*, 1st Dist. Hamilton No. C-000597, 2001 WL 705575 (Jun. 22, 2001). In Ohio, tortious interference with business relations is deemed an intentional tort. See e.g. *Schafer v. RMS Realty*, 138 Ohio App.3d 244, 302, 741 N.E.2d 155 (2nd Dist. 2000); *Sawyer v. Devore*, Cuyahoga No. 65306, 1994 WL 614978 (8th Dist. Nov. 3, 1994).

**{¶ 94}** Accordingly, in light of the fact that the jury found an intentional interference with the business relationship between the Dolans and Glouster, that tort, virtually by definition, is outside the scope of the Glouster parties' employment and cannot be used as a defense.

**{¶ 95}** Thus, we find no merit to the Glouster parties' ninth assignment of error and it is hereby overruled.

**{¶ 96}** Having reviewed those errors assigned and argued by the Glouster parties, we now turn to the Dolans and their cross-assignments of error.

### III. <u>THE DOLANS' CROSS-ASSIGNMENTS OF ERROR</u>

## AA. First & Second Cross-Assignments of Error

{¶ 97} We jointly consider the first and second cross-assignments of error because both assert that the trial court erred by granting a new trial to the Glouster parties, insofar as compensatory damages for emotional distress and for punitive damages.   The damages that had been awarded for those issues, and that the trial court subsequently vacated with its Civ.R. 59 ruling, was $230,000 for emotional distress against all three Glouster parties, and $500,000 in punitive damages against all three.   In granting a new trial on these two issues, the court noted that damages for emotional distress were "3.5 times that of the award for lost profits" and for punitive damages was "7.7 times that of the total award for lost profits."   The trial court further opined, at least with regard to the emotional distress award, that "[t]he jury may have punished the Defendants because the officers did not give logical reasons for not calling [the Dolans] for a tow."

{¶ 98} The trial court then concluded that these damages "were excessive and appear[ed] to have been given under the influence of passion and bias" and were "not sustained by the weight of the evidence and [were] contrary to law."   The Dolans argue this was error.

{¶ 99} Civ.R. 59(A) states, in pertinent part:

"A new trial may be granted to all or any of the parties and on all or part of the issues upon any of the following grounds:

　　　　　　　　*　　　　　　　　　*　　　　　　　　　*

(4) Excessive or inadequate damages, appearing to have been given under the influence of passion or prejudice;

　　　　　　　　*　　　　　　　　　*　　　　　　　　　*

(6) The judgment is not sustained by the weight of the evidence; however, only one new trial may be granted on the weight of the evidence in the same case;

(7) The judgment is contrary to law;"

Although the text of the trial court's June 8, 2011 judgment on the post-trial motions makes clear that the Glouster parties' motion for new trial was granted on the basis of Civ.R. 59(A)(4)(6)&(7), we need not consider whether the ruling was correct under all of those three subsections. Rather, we need only consider whether the ruling is sustainable under any one. Thus, we confine our review to Civ.R. 59(A)(4).

{¶ 100} A decision to grant a new trial under Civ.R. 59(A)(4) lies in a trial court's sound discretion and will not be reversed absent an abuse of that discretion.[22] This again requires us, as we have often mentioned herein, to find that the court's decision was so grossly violative of fact or logic that it evidenced not the exercise of will, but perversity of will; not the exercise of judgment, but the defiance of judgment; and not the exercise of reason, but, instead, passion or bias. *Vaught*, supra at ¶13; *Nakoff*, supra at 256. We further note that reviewing courts should view the evidence most favorably to a trial court's decision. *Hacker v. Roddy*, 3rd Dist. Hancock No. 5–13–13, 2013-Ohio-5085, at ¶28; *Rieman v. Congemi*, 8th Dist. Cuyahoga No. 83187, 2004- Ohio-1269, ¶6. The basis for the rule springs, in part, from the principle that a trial judge's discretion to grant a new trial may be supported by the judge having determined from the surrounding circumstances and atmosphere of the trial itself that the jury's verdict resulted in

---

[22] We hasten to add that an abuse of discretion standard of review does not apply to a decision under every Civ.R. 59 subsection. The Ohio Supreme Court has held that it only applies to those subsections where the decision to grant a new trial is discretionary. *Harris v. Mt. Sinai Med. Ctr.*, 116 Ohio St.3d 139, 2007-Ohio-5587, 876 N.E.2d 1201, at ¶35. Granting of a motion for new trial because a judgment is contrary to law under Civ.R. 59(A)(7), for example, presents a question of law that we would review de novo. *Ball v. Stark*, 10th Dist. Franklin No. 11AP–177, 2013-Ohio-106, at ¶15; *Lewis v. Nease*, 4th Dist. Scioto No. 05CA3025, 2006-Ohio-4362, at ¶76.

a manifest injustice. Id.   We again are also mindful of the fact that, in reviewing for an abuse of

discretion, we should not simply substitute our own judgment for that of the trial court.

*Buckmaster v. Buckmaster*, 4th Dist. Highland No. 13A13, 2014-Ohio-793, at ¶21; *Dunford v.*

*Dunford*, 4th Dist. Gallia No. 13CA7, 2014-Ohio-617, at ¶11; *Enyart v. Taylor*, 4th Dist.

Lawrence No. 13CA2, 2013-Ohio-4893, at ¶27.

{¶ 101}     Although the trial court discussed these two issues over two pages of its

twenty-one page decision, we recognize that the Glouster parties also challenged that the amount

of damages awarded in various other post-trial motions and considered by the trial court in those

contexts as well.   Thus, it is difficult for us to conclude the court acted arbitrarily or out of

"passion or bias."

{¶ 102}     The Dolans' arguments tend to primarily focus on the trial court's remarks

about the size of emotional distress damages and punitive damages relative to the amount of

damages for lost profits.   They cite a number of cases for the proposition that a disparity

between these figures, standing alone, constitutes an insufficient reason to vacate the awards and

to grant a new trial on punitive damages and emotional distress damages.   Although we readily

agree with the Dolans as an abstract proposition of law, their argument neglects to mention that

the trial court also opined that the jury may have been swayed to award these large

(non-financial) damages because defendants did not give adequate explanation for failing to call

the Dolans for tow services after the Chalfant incident, and that the Glouster parties in their

motion for new trial cited to testimony elicited from the Dolans about all the financial hardships

they allegedly suffered as a result of this incident.   David Dolan testified at one point that, as a

result of what had happened in Glouster, he and his family lost their Morgan County home due to

foreclosure.    Although the trial court sustained an objection to this question, and gave a limiting instruction to the jury to disregard it, we emphasize that unlike the trial court judge, we were not present in the court room to observe how the jurors reacted to the testimony.   The trial judge was present and we should defer to the court's judgment as to how the jury reacted to this and the Dolans' other potentially inflammatory economic evidence.

{¶ 103}        In the end, as we stated above, we find no abuse of discretion in sustaining the Glouster parties' Civ.R. 59 motion for new trial on emotional distress damages and punitive damages.   Accordingly, the first and second cross-assignments of error are without merit and are hereby overruled.

**BB. Third Cross-Assignment of Error**

{¶ 104}        The Dolans' third cross-assignment of error goes to the trial court's determination to grant the Glouster parties partial JNOV on their motion.   Specifically, although the trial court denied the motion insofar as the jury's determination that the Glouster parties tortiously interfered with the business relationship that the Dolans had with the city of Glouster itself, the Dolans posit that the court erred by granting JNOV for Taylor insofar as their claims that he interfered with the (tow) business relationship the Dolans had with Athens County.   We disagree.

{¶ 105}        JNOV, as we noted earlier, presents a question of law that we review de novo.  *Portsmouth Ins. Agency v. Med. Mut. of Ohio*, 4th Dist. Scioto No. 10CA3405, 2012-Ohio- 2046, at ¶79; *Magnum Steel & Trading, L.L.C. v. Mink*, 9th Dist. Summit Nos. 26127 & 26231, 2013-Ohio-2431, at ¶41.   In a de novo review, we afford no deference whatsoever to

the trial court's decision and will conduct our own, independent review to assure that the court's decision is legally correct. See e.g. *Clark v. Butler*, 4th Dist. Ross No. 12CA3315, 2012-Ohio-5618, at ¶9; *PNC Bank v. Dunlap*, 4th Dist. Ross No. 11CA3282, 2012-Ohio-2917, at ¶8.

{¶ 106}     In its June 8, 2011 judgment on the post-trial motions, the trial court entered JNOV for Taylor with regard to the claim that he tortiously interfered with the Dolans' business relationship with Athens County. The court opined that "Chief Roger Taylor does not supervise either [Robert Bentley, chief of operations for Athens County 911 emergency communications] or [any other] 911 personnel" in Athens County. We agree with the trial court's reasoning on this point.

{¶ 107}     As noted earlier, in reviewing the Glouster parties' argument that the failure to grant complete JNOV on the claims against them constitutes error, we find no direct evidence that the Glouster parties instructed any of the police officers in Glouster to stop using the Dolans for tow services. The jury's verdict on this point is based on circumstantial evidence, and that evidence is sufficient to support a judgment in a civil case.

{¶ 108}     However, the claims against Taylor insofar as Athens County are concerned are much different. Taylor, as the Glouster Chief of Police, had supervisory authority over the officers under his command. As the trial court aptly noted, he had no jurisdiction or control over Athens County officials. The trier of fact could reasonably conclude, from the hierarchy of the City of Glouster, that the elimination of tows extended to the Dolans resulted from the officers being told by Angle, Funk and/or Taylor not to use them because the Glouster parties occupied positions of authority over city police. However, they had no similar position

of authority over Athens County officials.

{¶ 109}     Absent that position of authority, the Dolans needed to produce evidence to show that Taylor influenced Athens County officials.   They have cited to us nothing in the transcripts that are persuasive on this issue and we have found no such evidence in our own review.

{¶ 110}     Accordingly, we find no merit to the third cross assignment of error and it is hereby overruled.


## CC.     Fourth Cross-Assignment of Error

{¶ 111}     In their fourth cross-assignment of error, The Dolans assert that the trial court erred by calculating the amount of attorney fees that it awarded to them.   Specifically, they posit that the trial court failed to account for the "Lodestar" principle of *Bittner v. Tri-County Toyota*, 58 Ohio St.3d 143,569 N.E.2d 464 (1991) and to award them only $95,553.33 in fees when they requested $173,922.50.   We find no merit to this contention.

{¶ 112}     With respect to attorney fees, Ohio adheres to the "American Rule" that holds that a prevailing party in a civil action cannot recover attorney fees absent a statute that expressly authorizes such recovery, or some other legal authority that expressly authorizes such recovery.   *State ex rel. Varnau v. Wenninger*, 131 Ohio St.3d 169, 2012- Ohio-224, 962 N.E.2d 790, at ¶23; also see e.g. *Corbin v. Kelly Plating Co.*, 187 Ohio App.3d 129, 2010-Ohio-1760, 931 N.E.2d 204 (8th Dist).   Exceptions to this general rule must be narrowly construed.   See *In re Estate of Fugate*, 86 Ohio App.3d 293, 298, 620 N.E.2d 966 (4th Dist. Feb. 11, 1993); *In re Keller*, 65 Ohio App.3d 650, 656, 584 N.E.2d 1312 (8th Dist. Dec. 18, 1989).

**{¶ 113}** One exception to that general rule is that when punitive damages are proper, attorney fees may be awarded. See *Columbus Finance, Inc. v. Howard*, 42 Ohio St.2d 178, 183, 327 N.E.2d 654 (1975); also see *Lowery v. Rizer*, 4th Dist. Hocking No. 96CA11, 1996 WL 665015 (Nov. 12, 1996). Here, although the trial court vacated the punitive damages award, this does not affect the attorney fee award per se as the trial court did not rule that punitive damages were not warranted, but only that the Glouster parties would be granted a new trial on the issue.

**{¶ 114}** Generally, the amount of an attorney fee award lies in a trial court's sound discretion and its determination will not be reversed absent an abuse of that discretion. *Semco, Inc. v. Sims Bros., Inc.*, 3rd Dist. Marion No. 9–12–62, 2013-Ohio-4109, at ¶40; *Lamar Advantage GP Co. v. Patel*, 12th Dist. Warren No. CA2011–10–105, 2012-Ohio-3319, at ¶43; *Friend v. Elsea, Inc.*, 4th Dist. Pickaway App. No. 98CA29, 2000 WL 1468499 (Sep. 26, 2000). In reviewing the court's exercise of discretion, "[u]nless the amount of fees determined is so high or so low as to shock the conscience, an appellate court will not interfere. The trial judge which participated not only in the trial but also in many of the preliminary proceedings leading up to <u>the trial has an infinitely better opportunity to determine the value of services rendered by lawyers who have tried a case before him than does an appellate court</u>." (Emphasis added.) *Cyrus v. Journey*, 4th Dist. Scioto No. 94CA2213, 1994 WL 675519 (Nov. 30, 1994); *Cremeans v. Robbins*, 4th Dist. Ross No. 99CA2520,   2000 WL 781215 (Jun. 12, 2000).

**{¶ 115}** In the case sub judice, the trial court held a hearing on this issue and both sides adduced considerable evidence. Later, the trial court issued two separate decisions that considered the amount of fees to award. The first, on December 15, 2011, ordered the Dolans

submit a revised bill. The second, on January 20, 2012, included the trial court's final attorney fee award. The considered judgments in both of those entries suggests anything but an arbitrary or unconscionable decision on the issue. Of course, the primary argument that the Dolans advanced in support of this cross-assignment of error is not that the trial court abused its discretion, but rather that it failed to comply with the "Lodestar" concept in *Bittner*. As this Court has previously noted, however, *Bittner* must be considered in light of the context within which it was decided. See *Brookover v. Flexmag Industries, Inc.*, 4th Dist. Washington No. 00CA49, 2002-Ohio-2404, at ¶226, fn. 26. That context is attorney fees awarded under R.C. Chapter 1345, Ohio's Consumer Sales Practices Act. See 58 Ohio St.3d 143 & syllabus. This legislation involves consumer sales transactions that are defined by statute as follows:

> "Consumer transaction" means a sale, lease, assignment, award by chance, or other transfer of an item of goods, a service, a franchise, or an intangible, to an individual for purposes that are primarily personal, family, or household, or solicitation to supply any of these things. . ." R..C. 1345.01(A)

**{¶ 116}** Whatever else can be said of the "business relationship" of the Dolans and the various party defendants named in this action, it obviously did not involve a consumer transaction. Therefore, the trial court did not err by failing to apply a principle that had no bearing on the proceedings at hand.

**{¶ 117}** Thus, the fourth cross-assignment of error is without merit and is hereby overruled.

**DD.     Fifth Cross-assignment of Error**

**{¶ 118}** The Dolans argue in their fifth cross-assignment of error the trial court

erred by denying their motion for pre-judgment interest.   We disagree.

{¶ 119}      As we noted various times herein, the Dolans recovered against the

Glouster parties under a theory of tortious interference with a business relationship.   Recovery of

prejudgment interest for such claims are covered under the provisions R.C. 1343.03 (C)(1) that

state in pertinent part:

> "If, upon motion of any party to a civil action that is based on tortious conduct,
> that has not been settled by agreement of the parties, and in which the court has
> rendered a judgment, decree, or order for the payment of money, the court
> determines at a hearing held subsequent to the verdict or decision in the action
> that the party required to pay the money failed to make a good faith effort to settle
> the case and that the party to whom the money is to be paid did not fail to make a
> good faith effort to settle the case, interest on the judgment, decree, or order shall
> be computed [as follows]" (Emphasis added.)

{¶ 120}      Whether a prejudgment interest award is warranted depends on whether a

court finds the existence of a good faith effort to settle the case.   That finding, and the decision

to award prejudgment interest on a tort claim, lies in a trial court's sound discretion and its

decision will not be disturbed   absent an abuse of that discretion.   See generally *Lewis v. Alfa

Laval Separation, Inc.*, 128 Ohio App.3d 200, 224, 714 N.E.2d 426 (1998 4th Dist.); *Evans v.

Dayton Power & Light Co.*, 4th Dist. Adams No. 05CA800, 2006-Ohio-319, at ¶12;

*Rothenbusch- Rhodes v. Mason*, 10th Dist.   Franklin No. 02AP- 1028, 2003-Ohio-4698, at ¶95.

In view of the stringent requirements for demonstrating an abuse of discretion, as we have

outlined several times in this opinion, we are not persuaded that the Dolans have shown it in the

case sub judice.

{¶ 121}      In its December 26, 2011 judgment that denied the Dolans' request for

pre-judgment interest, the trial court expressly found that the "Defendants [meaning the Glouster

parties] made a good faith monetary settlement offer based upon their evaluation of their case and the high settlement demands of the plaintiffs [meaning the Dolans]."   In so ruling, the court opined that the Dolans were not particularly reasonable in their attempt to settle this case and could have "made a more realistic settlement demand" as a counter-offer to that made by the Glouster parties.

{¶ 122}        As is true for all its rulings, the trial court's decision to deny pre-judgment interest is contained in a lengthy, six page judgment that carefully weighed all competing claims on the issue.   Even assuming, arguendo, that one or more members of this Court may have exercised their own discretion differently, we simply cannot conclude that in the case sub judice the trial court's reasoned and judicious decision is in any way arbitrary, unreasonable or unconscionable.

{¶ 123}        Thus, the fifth cross-assignment of error is without merit and is hereby overruled.

## IV. Conclusion

{¶ 124}        Having considered all of the errors and all of the cross-assignments of error advanced and argued in the briefs, we hereby affirm the various judgment(s) of the trial court consistent with this opinion appealed herein by both the Glouster parties and the Dolans.

JUDGMENT AFFIRMED.

[Cite as *Dolan v. Glouster*, 2014-Ohio-2017.]

## __JUDGMENT ENTRY__

It is ordered that the judgment be affirmed and that the parties herein equally divide all costs herein taxed.

The Court finds there were reasonable grounds for this appeal and cross-appeal.

It is ordered that a special mandate issue out of this Court directing the Athens County Common Pleas Court to carry this judgment into execution.

A certified copy of this entry shall constitute that mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Abele, P.J., Harsha, J. & McFarland, J.: Concur in Judgment      & Opinion

For the Court

BY:_____
        Peter B. Abele, Presiding Judge

BY:_____
        William H. Harsha, Judge

BY:_____
        Matthew W. McFarland, Judge

NOTICE TO COUNSEL

Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.